MARY BEERMAN, PETITIONER-PROSECUTOR, v. PUBLIC SERVICE CO-ORDINATED TRANSPORT, RESPONDENT-DEFENDANT.

Submitted October 13, 1939—Decided December 14, 1939.

480

Before Brogan, Chief Justice, and Justices Donges and Porter.

For the petitioner-prosecutor, *Abram A. Lebson.*

For the respondent-defendant, *Henry H. Fryling* and *William H. Speer* (*William F. Vosseller,* of counsel).

BROGAN, CHIEF JUSTICE. *Certiorari* was allowed in this case to review a judgment of the Bergen County Pleas, reversing a judgment of the Compensation Bureau which awarded compensation to Mary Beerman, the widow of a deceased employe of the respondent. It is beyond dispute that Henry Beerman, the employe, died from cancer (lympho-sarcoma). The claim petition stated that the employe met with injury by accident that arose out of and in the course of the employment. The injury consisted of an alleged straining of the recti and lumbar muscles as a result of attempting to prevent a large bus wheel from falling. The two tribunals which passed on the questions involved arrived at directly opposite judgments on the facts. Whether they are in conflict or accord makes no difference in this court since it is our duty under the statute (*R. S.* 2:81-8) to determine the law and the facts independently of the finding thereon by the lower courts. (*Cf. Anderson* v. *Federal Shipbuilding and Drydock Co.*, 118 *N. J. L.* 55, and cases cited therein.)

Two questions are argued in the prosecutor's brief—(a) Did the prosecutor prove injury by accident on the stated occasion? (b) Did the prosecutor sustain the burden of proving that death was due to the injuries suffered through the accident either as a direct or as a contributing cause by aggravating an existing condition?

The decedent was twenty-four years old at the time of the occurrence, weighing one hundred and eighty pounds, with no appearance of illness. He worked at night as a repair man at the garage of the respondent in Cresskill, Bergen county, New Jersey. When he came home on the morning of September 23d, 1935, he complained to his wife, saying, "I strained my gut," and that he had pains across his back. He consulted Dr. Mark M. Kroll, a physician of his own choosing, and later, on the advice of Dr. Kroll, went to see Dr. Protzman, who is on the medical staff of the respondent employer. Thereafter he worked intermittently, but on October 5th, entered the Englewood Hospital where he remained until he died on November 4th. At the time of his death his weight had dwindled to approximately one hundred pounds.

A fellow employe testified that on September 22d, while the decedent was at work on one of respondent's buses, he noticed him in a squatting position under a bus, apparently working at the clutch, and the decedent, in answer to the witness' question as to what was the matter with him, said, "I don't know. My stomach hurts—just putting this thing up here." About an hour later decedent was observed lying down in the bus; at that time Beerman repeated that he had "hurt his gut" working on the bus and that his back hurt him a little. The foreman's book carried an "accident report" of the fact that the decedent claimed to have been hurt. There is conflict as to the date of the injury but, in our view, that is immaterial. The question of notice is not seriously disputed.

The death report, after autopsy, showed that the principal cause of death was cancer and that the "contributory cause of importance, not related to principal cause, is accidental sprain of recti and lumbar muscles, September 29th, 1935."

We turn to the main fact issue.

Dr. Kroll, to whom the decedent went first for treatment, testified that he had diagnosed the trouble as "acute myositis of traumatic origin" which is a doctor's way of saying that there was severe inflammation of the stomach muscles brought about by force externally applied. He frankly admitted, in the light of subsequent developments, especially the autopsy, that this diagnosis was incorrect; that after treating Beerman he sent the patient, an employe of the transport company, to Dr. Protzman, the company's doctor. Dr. Protzman testified that when he saw Mr. Beerman he treated him by heat applications and "strapped up" his back. He treated the employe until October 5th, but on October 7th, upon calling at Mr. Beerman's home and finding him unable to move, he advised that he be taken to the hospital, which was done on October 10th. Mr. Beerman died on November 4th. It was Dr. Protzman's opinion prior to the autopsy that the accidental sprain was the cause of death.

In this case all the medical testimony agreed, particularly after the autopsy, that the death was due to cancer. It is also

undisputed that this type (lympho-sarcoma) rapidly develops and that it could exist without manifesting symptoms until well developed; that its growth would finally cause pain similar to that of sprain as the cancer expanded and pushed aside or displaced tissue, particularly muscle tissue; that this type of cancer as such might readily cause the separation of the fibers and tissues of the recti muscles, which, when the autopsy was performed, appeared to have been displaced.

The referee, in a long careful opinion, set out his findings in full. His report discloses, however, that he made personal research into the medical authorities and places reliance on articles and treatises concerning cancer. This he had no legal right to do. The vice of this practice is, of course, apparent and elementary. No one should be bound by the mute testimony of another's written statement or opinion, however authoritative, without the opportunity of cross-examination. On the appeal, however, the judge in the Pleas reversed by merely stating in effect, without more, that the petitioner had not discharged the burden of proof.

Turning again to the medical testimony, it is clear that Dr. Kroll's diagnosis was a mistaken one as was Dr. Protzman's. The former said that a sprain of the recti muscles "may develop" cancer and he "guessed that it would," or could aggravate a latent cancer, and that when decedent died he was "completely loaded with cancer." On cross-examination he admitted a lack of experience in cancer cases but was of the opinion that the trauma had something to do with the death and that probably it aggravated the cancer and caused it to spread.

Now Dr. Protzman testified that he thought there was a sprain of the back muscles but that he changed his opinion about the case when decedent was admitted to the hospital; and that he then thought it was a possible spine fracture; that when he made out the first death certificate (there were two certificates, one before the other after an autopsy) he was of the opinion that the accident in question had caused the death, but that when an autopsy was had he changed his view and then believed that cancer caused the death and that it was unrelated to the alleged injury by accident.

Dr. Raphael Gilady, produced by the petitioner on rebuttal, admittedly an expert, testified from his examination of the records, slides, &c., taken at the hospital at or following immediately the autopsy, in answer to a hypothetical question, that the alleged injuries "accelerated the dissemination of the tumor and hastened his death." On cross-examination this statement was somewhat modified by his further opinion that a mere lifting of a heavy object would not cause a rupture of the tumor but that it would have to be from a forceful blow or sudden impact. He further stated that the enlarging and infiltrating mass would cause pressure on nerve and tissue as it grew, resulting in symptoms similar to those felt from sprain.

Dr. Braunstein, the assistant physician of Hudson county, was under call as a witness for the petitioner but, being unable to be present, it was stipulated that his testimony would support that of the previous witness, Dr. Gilady.

For the respondent, a number of experts was produced to contest the fact issue.

Dr. Francis J. Fadden, Jr., the surgeon who performed the autopsy, found that most of the vital organs were infiltrated with tumor cells and that death was due to cancer, with multiple metastasis; he found no separation of the diaphragm, no tearing of the recti muscles, no blood tumor in the region of the recti muscles, but a separation of those muscle fibers on the right side caused by the spread of the tumor. His opinion was that the alleged accident was not the *probable* cause of the death yet he admitted that he did not know whether it *could have been* the cause.

Dr. Carterwood, a specialist on cancer diagnosis, had the opinion and so testified that there was no causal relationship between the accident and the death; that the deceased possibly had cancer for a year; that the disease develops rapidly; that its cause is unknown; that there is no definitely known cure and that as this dread disease developed in the area in question it would penetrate between the muscle fiber causing separation thereof and pressing on nerves with resulting pain. He also expressed the opinion that there is no relationship

between trauma and lympho-sarcoma and that this view is entertained by many recognized specialists in this field, and concluded by saying that the alleged injury in this case was not even the probable cause of death, basing this on his examination of the microscopic sections taken after the autopsy.

Dr. Leilia Knox, a specialist in cancer, who sat in the conference concerning this case at the Englewood Hospital in February, 1936, also was of the opinion that there was no relationship between trauma and cancer. She further thought that conceivably the disease might spread more rapidly if, by trauma, blood vessels not already involved were opened. Her opinion, in the main, agreed with that of Dr. Carterwood.

Dr. James Ewing, a specialist with forty-five years' experience as a physician, specializing in diseases of this character, including lympho-sarcoma, was of the opinion that many cases are the result of chronic infections which result in the transmission of malignant organisms through the lymph-nodes. He, too, was of the opinion that there is no causal connection between trauma and this particular disease; that all the evidence is against this theory and that a person suffering from such disease might seem to be in a healthy condition. His conclusion was that in this case there was no causal relation between the accident and the death.

Dr. James J. Duffy, a cancer specialist, agreed with the other expert witnesses for the respondent that trauma bore no relationship to lympho-sarcoma. He said decedent died from extensive and widespread disease existing for six months to one year before death. It was his further judgment that the alleged strains had not aggravated the cancerous condition and that the deceased was approaching a critical stage when the accident happened.

Dr. Harrison S. Martland, chief medical examiner of Essex county, with vast autopsy experience, including many lympho-sarcoma cases, expressed an opinion that was in complete accord with the findings of the other pathologists produced by the respondent.

Dr. Edgar A. Ill, a pathologist practicing since 1910, with

experience in this type of case since 1919, also agreed in his expressed opinion that there was no relationship between the alleged accidents and the death of the petitioner's husband. His view was that the pains mentioned would not produce or cause a cancer of this type and that the absence of blood tumor indicated that there had been no tearing of the muscle tissue. He was further of the opinion that the growth of the cancer in this case was extensive four or five months before the death of Mr. Beerman.

The prosecutor of this writ urges here, as below, (1) that the accidental injuries caused the lympho-sarcoma and death or (2) that they aggravated a latent, dormant cancerous state. We find no proof whatever to sustain the first of these propositions. The attending physician, Dr. Kroll, said that it was *not* probable that a sprain of the muscles would cause a sarcoma in that region. The other doctors, in the main, thought that it was not a probable cause and some testified that it was not even a possible cause. Now as to whether there was an aggravation of this dormant condition, which is the second proposition; true it is that Drs. Kroll and Gilady expressed opinions upon which, standing alone, the findings of the bureau could be sustained, but, looking at all the testimony, such a conclusion on our part would be contrary to the weight of credible evidence. Taking the petitioner's case at its best, and we think the testimony of Dr. Gilady is the strongest support for the theory of aggravation, he stated that the trauma would have had to be of sufficient force and severity to rupture the tumor. Now there was no proof of tumor rupture; in fact, the testimony was in effect that the lack of hemorrhage negatived the idea that there had been any serious traumatic injury. And it should be mentioned that the theory of the medical experts for the prosecutor is not at war with the testimony of the pathologists testifying for the respondent, namely, that the disease may well have existed, and probably did exist, months before the alleged accident or accidents of September, 1935, and that a growth of this type of sarcoma, as it found its way through the fiber muscles, caused a spreading resulting in the pain which the deceased suffered. The

prosecutor, of course, has the burden of proof. It is our view that she did not sustain it, the testimony of her own witnesses being compatible with the theories of the pathologists testifying for the defense. The testimony for the prosecutor amounts to a bare conclusion which, in the case of Dr. Gilady, was weakened, if not negatived, by his own limiting statements concerning the cause—trauma—as to the alleged effect —lympho-sarcoma.

After careful consideration and review of the discrepant facts—where there is conflict—we are compelled to conclude that the injury by accident relied upon to make out a case for compensation neither caused the disease from which Mr. Beerman died nor aggravated it.

The judgment of the Pleas must be affirmed, and the prosecutor's writ of *certiorari* dismissed.