The opinion of the court was delivered by
SHEBELL, P.J.A.D.
Employer Township of Sparta, appeals from the June 28, 1994 order of the Division of Workers’ Compensation, granting petitioner, John F. Hanrahan, continued medical treatment. We affirm.
On February 8, 1992, petitioner was injured in an automobile accident during and in the course of his employment as a Township Police Officer. On November 30, 1992, he filed a Workers’ Compensation Claim Petition alleging “injury u> neck, right shoulder and low back with orthopedic residuals thereof’ arising out of the accident. Respondent filed an answer admitting the “jurisdictional facts.” Petitioner, by motion dated April 1, 1993, sought authorization for “on-going medical treatment in accordance with the recommendations of Dr. James L. Scales of Newton, N.J.” Respondent filed an answering statement placing the issues in dispute and noting that “petitioner was evaluated by Dr. Dorsky on October 14, 1992 and was found to have reached maximum medical recovery.”
Hearings were held on September 20, 1993, March 7, 1994 and March 28, 1994. On April 20, 1994, the Judge of Compensation rendered an oral decision granting petitioner additional medical benefits. On June 28, 1994, an order was entered requiring respondent to provide additional treatment “and to continue to provide treatment until the petitioner is relieved of the effects of the injury, is discharged from treatment or by further Order of this Court.”
On February 8, 1992, the petitioner was in his patrol car, when another vehicle, going about forty-five miles per hour, struck his vehicle in the rear. Petitioner received emergency medical treat *330 ment at the Newton Memorial Hospital. X-rays were taken of his cervical spine and skull. The cervical spine x-ray showed degenerative changes at C4-C5. The hospital staff gave him a cervical collar and some medication and he was released.
A few days to a week after the accident, petitioner experienced “problems” with his lower back and sought follow up care. He first went to a chiropractor a couple of times. Then, upon advice from respondent’s insurance carrier, on April 8, 1992, he began treatment with Dr. Scales. Dr. Scales made a diagnosis of acute cervical sprain and acute lumbosacral sprain. He prescribed medication, physical therapy and a home exercise program. The physical therapy included moist heat, electric stimulation, ultrasound, massage, and range of motion and stretching exercises.
With treatment, the problems with petitioner’s neck, right shoulder and lower back improved somewhat over the néxt few weeks. Petitioner testified that at that point he still experienced sporadic sharp pain in the base of his neck and that his shoulder would cramp. He also testified that the pain in his lower back would not go away and that when it became unbearable he would take the pain medication prescribed by Dr. Scales. Dr. Scales continued to order physical therapy. By May 1992, the doctor had added to his diagnosis of petitioner’s injuries a right thoracic outlet syndrome. By May 27, 1992, the doctor felt that petitioner’s condition was improving but that he would require an epidural steroid injection since he had not responded to conventional measures thus far for the thoracic outlet syndrome. Petitioner noted significant relief of the low back symptoms as a result of the injection.
In August of 1992, Dr. Scales referred petitioner to a neurologist for a consultation. The neurologist reported that petitioner suffered from mild brachioplexitis. On September 23, 1992, Dr. Scales again updated his diagnosis of petitioner. His new diagnosis was cervical sprain nearly resolved, probable annulus tear of the lumbosacral spine, mild right brachioplexitis and compensatory rotator cuff tendonitis of the right shoulder secondary to paresthesias. He advised petitioner to continue physical therapy for the rotator cuff tendonitis.
*331 In October 1992, petitioner was examined at the request of respondent’s insurance carrier. At this time petitioner was still seeing Dr. Scales and was receiving physical therapy. As a result of respondent’s doctor’s examination and report, in November 1992, petitioner received notice from respondent’s insurance carrier that “they were going to cancel the insurance benefits.”
Petitioner also saw Dr. Dwyer, “a spine specialist,” to whom he was referred by Dr. Seales, in November 1992. Dr. Dwyer gave petitioner facet joint and epidural injections. Petitioner did not see any doctor from November of 1992 until his last visit to Dr. Dwyer in July or August of 1993 because the insurance carrier “wouldn’t pay for the visit.”
Petitioner testified that he never had low back pain of any sort before the accident. After the accident, petitioner avoided lifting and advised his shift supervisor that he could not go on ambulance calls and lift patients onto ambulances. At the hearing on the motion, on September 20,1993, petitioner testified that as a result of the accident he had sporadic sharp pain in the base of his neck, spasm or tightening of the muscle to the left side of his shoulder and constant pain in his lower back for which he continued to take the prescribed medicine. He also indicated that when he does any kind of strenuous work, his back pain becomes “really painful,” and that occasionally the pain radiates down to his buttocks. Petitioner stated, with regard to his pain, that for the four or five months preceding trial he had both bad and good periods and that the pain was not getting any better or any worse.
Petitioner presented the testimony of Dr. Horia Schwartz, who was stipulated to be an expert in the field of physical medicine and rehabilitation. The doctor testified to having reviewed the treating doctors’ office notes, the therapy reports and other medical records and to having examined the petitioner. Dr. Schwartz’s opinion was that petitioner
has been left with permanent residuals of multiple work related trauma, secondary to a motor vehicle accident, with indications of sprain and strain of both cervical and lumbosacral spine with myositis and myofascitis as well as radicular neuropa-thy secondary to an impingement like syndrome, particularly in the left lower extremity....
*332 Dr. Schwartz was convinced that an adequate course of treatment would relieve petitioner’s symptomatology. The doctor also opined that given the nature of police work such treatment was necessary due to the potential for further re-injury. The doctor recommended that petitioner be fitted with a lumbosacral support and receive hydrotherapy and a TENS appliance to reduce discomfort and muscle spasm and to increase flexibility of the spine. The doctor indicated that his approach, which he termed a “kitchen sink” approach, would be to try different treatment modalities depending upon what the patient found to be beneficial.
When asked within what period of time this “kitchen sink” approach should be employed, the doctor responded that it would be three to six months. He felt that petitioner would not have to be treated every day, or be part of a formalized program. Rather, petitioner would only need a half-hour of instruction on how to use the TENS appliance and another half-hour of instruction on certain exercises. Periodic evaluation would also be needed to make sure that everything was in order. Dr. Schwartz asserted that this series of modalities would not cure petitioner, but would reduce his symptomatology and condition to such an extent that he would be able to work and function better and be more flexible.
Respondent presented the report of Dr. Bertram Kummel, an expert in the area of orthopedics, who examined the petitioner on June 25,1993. Dr. Kummel found no evidence of residual disability to the back or neck. He indicated that there was some limitation of motion in the shoulder, which he concluded would not be reduced by further treatment.
The Judge of Compensation concluded that since treatments in the past to the neck and shoulder and the injections in the lower back had been effective in relieving petitioner’s symptoms, “it seems probable that additional treatment will relieve the petitioner’s symptoms and perhaps restore function to the lower back enabling petitioner to lift more weight.” The judge found that Dr. Kummel’s conclusion that petitioner had a non-organic syndrome which would not respond to treatment was “not substantiated by the facts of this case.”
*333 Appellant contends that the medical treatment ordered was not properly authorized by the Workers’ Compensation Act as it was palliative, and not curative, in a non-total disability case. We disagree.
“In any problem relating to the construction of the Workmen’s Compensation Act, ... the act is to be liberally construed.” Howard v. Harwood’s Restaurant Co., 25 N.J. 72, 88, 135 A.2d 161 (1957). The Act provides that:
The employer shall furnish to the injured worker such medical, surgical and other treatment, and hospital service as shall be necessary to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member or organ where such restoration is possible. N.J.S.A. 34:15-15. [Emphasis Added.l
It was unsuccessfully argued in Howard that the word “and” in “cure and relieve” was used in the conjunctive sense, and that therefore “cure” operates as a precondition to “relieve.” Howard, Supra 25 N. J. at 87-88, 135 A.2d 161. Our Supreme Court found “the legislative intent to be clearly otherwise.” Id. at 88, 135 A.2d 161. It held that a worker was entitled to benefits for treatment which would afford relief from the sufferings incident to an accident arising out of his employment, whether or not a cure might at the same time be effectuated. Id. at 91, 135 A.2d 161. The Court concluded that “curing” was not a necessary precondition to “relieving” and that medical services which afford relief alone are allowable finder the statute. Id. at 93-94, 135 A.2d 161.
Respondent urges that the holding in Howard, Supra should be limited to cases of total disability, noting that Howard involved a totally and permanently disabled worker who required constant nursing care in addition to palliative physiotherapy treatment. Id. at 94, 135 A.2d 161. In support of its contention, respondent cites Sa v. Harrison & Son, Inc., 38 N.J. 203, 209, 183 A.2d 410 (1962), for the proposition that palliative treatment is limited to cases of total disability. Sa Supra however, is not authority for such a proposition. Sa Supra 38 N.J. at 209, 183 A.2d 410. In Sa Supra the issue was whether an order could be fashioned with respect to medical treatment or expenses which were not shown to be presently needed but which might become necessary in the future. Id. at 204, 183 A.2d 410. The Sa court held that on the *334 facts of that case, it was not proper to direct the employer to furnish future treatment as the medical testimony indicated no likelihood of a prospective need for it. Id, at 209-10, 183 A.2d 410.
The Howard Court did not limit its holding to cases of total disability. Howard, Supra, 25 N.J. at 93, 135 A.2d 161. Howard requires only that the treatment be shown by competent medical evidence to be reasonably necessary to cure or relieve the worker of the effects of the injury or to restore function to the injured member or organ where such restoration is possible. See Howard, Supra, 25 N.J. at 93, 135 A.2d 161. In Squeo v. Comfort Control Corp., 99 N.J. 588, 606, 494 A.2d 313 (1985), our Supreme Court stressed that “in determining what is reasonable and necessary, the touchstone is not the injured worker’s desires or what he thinks to be most beneficial. Rather, it is what is shown by sufficient competent evidence to be reasonable and necessary to cure and relieve him.” Id at 606, 494 A.2d 313.
The scope of appellate review in workers’ compensation cases is set forth in Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965); Perez v. Monmouth Cable Vision, 278 N.J.Super. 275, 282, 650 A.2d 1025 (App.Div.1994). The factual findings of the compensation judge will not be disturbed unless they are “manifestly unsupported by or inconsistent with competent, relevant and reasonably credible evidence as to offend the interests of justice.” Monmouth Cable Vision, Supra, 278 N.J.Super. at 282, 650 A.2d 1025 (quoting Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974)).
Appellant asserts that the judge based his finding of necessity solely on the fact that petitioner is a police officer and appellant argues that being a police officer does not in itself satisfy the medical requisite of proving necessity for medical treatment. Here, however, there was other evidence and competent medical testimony upon which the judge based his decision to order additional treatment.
The judge in rendering his decision noted:
*335 Based upon his physical examination of petitioner, Dr. Scales made a diagnosis of acute cervical sprain and acute lumbosacral sprain. After further examination, Dr. Scales added to his diagnosis right thoracic outlet syndrome. An MRI performed on June 3,1992, revealed a slight posterior disk bulge at L5-S1. Another MRI of the cervical spine was performed on August 18, 1992, which revealed a disk space narrowing at the C4-C5 level with what appeared to be a moderate diffuse annular bulge. The plain films also demonstrated an anterior and posterior bony ridging accompanying the bulge. The posterior ridging obliterated the anterior subarach-noid space, but there was no evidence of deformation of the spinal cord. The spinal cord was felt to be at the lower range of normal or borderline stenotic. At the C5-C6 level there was a much smaller posterior ridge more prominent towards the left side. Plain film correlation demonstrated a bony component to both posterior ridges. There was noted to be an encroachment of the neural foramen bilaterally at both the C4-C5 and the C5-C6 level.
Dr. Roberts’ neurological consultation also was noted to have revealed a mild brachioplexitis with minimal denervation in the flexor earpiradialus muscle as well as intermittent paresthesia of the thumb, and first and second fingers suggesting a lesion in the lateral cord of the plexus. Dr. Dwyer’s examination of October 28, 1992 revealed a decrease of 75 percent of extension of the lower back. Lateral bending was decreased by 50 percent and produced pain. Extension rotation maneuvers were painful as well. Dr. Dwyer diagnosed an annulus tear of the lumbar spine with bulging disk.
The judge also gave weight to the testimony of petitioner that the accident and injuries have affected his ability to engage in his functions as a police officer, and that it is difficult for him to maintain 12-hour shifts in a patrol car without it becoming painful. Petitioner stated that he can’t lift or do any other type of strenuous work during his job and that he asked his supervisor not to assign him to ambulance duty unless it was absolutely necessary. In addition, petitioner testified to experiencing pain in his neck and that it was hard for him to turn his head from side to side, causing difficulty in his driving a police vehicle.
Dr. Schwartz’s reasoning was that if the patient were treated with a variety of modalities including physical therapy, that while the pathology would remain the same, functionally and symptomo-logically there would be change because with treatment there would be less pain and with less pain the petitioner could function *336 better. He explained that if you have an increased range of motion, you can move better, and if you have less pain, you can walk, bend, lift, and twist farther and do more of it.
It is clear that the judge did not find that additional treatment was necessary merely because petitioner was a police officer. Rather, he held that further treatments were necessary based upon the success of treatment in the past and upon the testimony of Dr. Schwartz that additional treatment would probably relieve petitioner’s symptoms and thereby improve his ability to function.
We hold that even in non-total disability cases N.J.S.A. 34:15-15 provides for continued treatment, whether or not labeled as “palliative,” as long as there is a showing by competent medical testimony that the treatment is reasonably necessary to cure or relieve the effects of the injury. See Squeo, Supra, 99 N.J. at 606, 494 A.2d 313; see also Howard, Supra, 25 N.J. at 93, 135 A.2d 161. Obviously there is a point beyond which reason dictates that the pain or disability experienced by the worker is insufficient to warrant the expense of active treatment. See Squeo, Supra, 99 N.J. at 606, 494 A.2d 313. This is not the situation presented here. Dr. Schwartz’s testimony that additional treatment would reduce the petitioner’s symptomatology and would restore function was accepted by the judge and is sufficient to meet the statutory requirement of reasonable necessity. This court concludes that the judge’s findings could reasonably have been reached on sufficient credible evidence present in the record, and that his conclusions are legally sustainable as a correct interpretation of the Act. See Kordulak, Supra, 44 N.J. at 599, 210 A.2d 753.
We note, however, that the order entered provides that continued physical therapy is to be provided until the petitioner is relieved of the effects of the injury, is discharged from treatment or by further order of the court. This language requiring the employer to provide treatment until petitioner is relieved of the effects of the injury has the potential for extending treatment beyond the parameters of the proofs upon which the judge based his ruling, and thereby exceeds the judge’s oral determination *337 directing that the employer “provide the additional treatment to petitioner’s low back.” We were advised at oral argument that treatment has not yet been rendered, thereby further disabling the petitioner. Therefore, an amended order should be entered in accordance with the views expressed herein.
We are constrained to add that we find it extremely disconcerting that despite the absence of a stay, the treatment, ordered by the Judge of Compensation after petitioner was compelled to wait 15 months for relief to finally be ordered, has not yet been provided. We consider the failure of the system to provide a prompt remedy to petitioner to be a matter for the Division of Workers’ Compensation to investigate and to take appropriate remedial action.
Affirmed.