GARNET CLOSE, PETITIONER-RESPONDENT AND CROSS-APPELLANT, v. KORDULAK BROS., RESPONDENT-APPELLANT AND CROSS-RESPONDENT.

CHARLES HENRY CLOSE, PETITIONER-RESPONDENT, v. KORDULAK BROS., RESPONDENT-APPELLANT.

Argued December 14, 1964—Decided June 1, 1965.

590

*Mr. H. Curtis Meanor* argued the cause for petitioners-respondents and cross-appellant (*Messrs. Lamb, Blake, Hutchinson & Dunne,* attorneys; *Mr. Meanor,* of counsel).

*Mr. William T. McElroy* argued the cause for respondent-appellant and cross-respondent (*Messrs. Pindar, McElroy, Connell & Foley,* attorneys; *Mr. McElroy,* of counsel; *Mr. George J. Kenny* and *Mr. McElroy,* on the brief).

The opinion of the court was delivered by

HALL, J. Charles Henry Close, the employee involved in these workmen's compensation proceedings, was a welder, who, while working for Kordulak Bros. on a construction job in Bayonne, New Jersey, on September 9, 1959, suffered a heart attack. The nature of the attack was a coronary occlusion which resulted in a myocardial infarction. It has been conceded throughout that the incident constituted a compensable injury. He never returned to his trade and died from heart failure on August 3, 1961. During his lifetime he filed a petition seeking temporary and permanent disability compensation and after his death his widow commenced the second of the actions before us asking for the award of dependency benefits. The cases were consolidated for trial.

The fundamental issue, under the principles and guidelines laid down in *Dwyer v. Ford Motor Co.,* 36 *N. J.* 487, 491–495 (1962), and *Schiffres v. Kittatinny Lodge, Inc.,* 39 *N. J.* 139 (1963), was whether the death was causally related to the

accident or resulted rather from the mere natural progression of underlying arteriosclerotic heart disease. Judge of Compensation Stahl held causal relationship was sufficiently established, finding "that the petitioner's decedent died as a result of the injury and initial damage to his heart and the subsequent downgrade of health which continued unabatedly until the time of his death * * *." The County Court came to the same conclusion on appeal after *de novo* consideration of the record in the Division of Workmen's Compensation. *N. J. S. A.* 34:15–66; *R. R.* 1:2–12(a), 5:2–5(d). The award was for temporary disability compensation from the date of the accident to the date of death (less a period of six weeks during March and April 1960 when Mr. Close was permitted by his physician to engage in the light work of soldering lamp parts sitting at a bench) plus death benefits for his dependents thereafter pursuant to *N. J. S. A.* 34:15–13. The employer appealed to the Appellate Division. Contending that the requisite causal relationship had not been established, it urged, of course, that dependency benefits were erroneously awarded. In line with this thesis, it took the position that the permanent disability properly attributable to the accidental injury was only partial (its proofs estimated such at 25% of total) and that temporary disability compensation should not extend beyond the date within his lifetime when the condition resulting therefrom had become static.

A second question in the case was the number of dependents entitled to share in death benefits, assuming the propriety of an award for that aspect. When the coronary incident occurred in September 1959, the employee had a wife and five children. A sixth child, conceived after that event, was born a little more than two months before his death. The widow and all six of the children were actually a part of his household at the time of death and each child was then under 18 years of age. Both the Division and the County Court held that the child born after the accident was not entitled to dependency benefits because they considered that prior judicial interpretations of the pertinent statutory sec-

tion, *N. J. S. A.* 34:15–13(g), required as matter of law that dependency based on relationship be determined as of the date of the original accident rather than at the time of death. The widow cross-appealed from this denial of benefits to the afterborn child.

We certified both appeals on application after the filing of briefs in the Appellate Division and before the matter came on for argument there. *R. R.* 1:10–1A. This Court in this case therefore occupies the same position as the Appellate Division would have, namely, the first reviewing tribunal beyond the County Court.

## I.

The matter of the causal relation of the original accident to the death almost two years later is essentially a question of fact. Both the Division of Workmen's Compensation, after a full-blown adversary trial, and the County Court, on a *de novo* consideration of the record, resolved that question affirmatively on conflicting proofs, mostly in the nature of medical opinions. Since *Russo v. United States Trucking Corp.*, 26 *N. J.* 430 (1958), and *Ricciardi v. Marcalus Manufacturing Co.*, 26 *N. J.* 445 (1958), it has been obligatory upon the Appellate Division, in the review of factual determinations in compensation cases on appeal from the County Court, to undertake another independent review and evaluation of the evidence and make its own findings and conclusions thereon. Recently, in *McAllister v. Board of Education, Town of Kearny*, 42 *N. J.* 56 (1964), we held that *Russo* and *Ricciardi* do not make mandatory a fourth factual finding by this Court where an appeal from the judgment of the Appellate Division is allowed. We further pointed out that, even with respect to review in that tribunal, "those decisions have not escaped criticism (13 *Rutgers L. Rev.*, at *pp.* 73, 172 (1958)) and have entailed troublesome problems" and that "[p]erhaps they should be reconsidered * * *" 42 *N. J.*, at *p.* 58. See also *State v. Johnson*, 42 *N. J.* 146, 160, *n.* 2 (1964). We

think that this case, in which we have the same reviewing obligation as the Appellate Division would have if the appeals had remained with it, furnishes an appropriate opportunity to look again at their procedural doctrine.

Neither *Russo* nor *Ricciardi* was decided by a full court and the same justices did not sit in both cases. Consolidation of the votes discloses that three justices, who remain members of the court in the instant case, felt that the Appellate Division is not *required* to make new and independent fact findings in compensation appeals. The view of the present court is that the *Russo* majority overlooked some vital considerations in arriving at its contrary conclusion and that reappraisal in the light of those considerations now makes it apparent that the majority there was in error.

The *Russo* result rested on two propositions. First, the court said, that under the pre-1947 practice the former Supreme Court in reviewing a compensation case "was *required* to re-evaluate the evidence." (Emphasis supplied) 26 *N. J.*, at *p.* 433. Second, it concluded that there was "no basis for an inference that it was the intendment of the new practice to lessen the scope of review on factual matters in workmen's compensation proceedings." 26 *N. J.*, at *pp.* 434–435. The oversight occurred with respect to this latter holding in not giving appropriate recognition to certain provisions of the *Constitution of* 1947 and subsequent implementation thereof. Demonstration of the error therein necessitates a brief summary of the former practice.

At the time of the adoption of the 1947 Constitution and for an extended period previously, appeal from the then Workmen's Compensation Bureau was, by statute, *N. J. S. A.* 34:15–66, to the Court of Common Pleas where the case was determined *de novo* on the record made in the Bureau. The action of that court was reviewable in the former Supreme Court only by the discretionary prerogative writ of *certiorari*. *Anderson v. Federal Shipbuilding & Dry Dock Co.*, 118 *N. J. L.* 55 (*Sup. Ct.* 1937), quoted and relied upon in *Russo*, 26 *N. J.*, at *p.* 434, in support of the first proposition as to the

requirements of the old practice, may be assumed to have held that it was obligatory on *certiorari* in compensation cases to weigh the evidence and make independent fact findings, although concordant findings of the two lower tribunals would not be lightly disturbed where there was evidence to support them. This holding was based on section 11 of the Certiorari Act, *R. S.* 2:81–8; *L.* 1903, *c.* 174, § 11, which read in pertinent part:

"When a writ of certiorari is brought * * * to review the proceedings of any special statutory tribunal * * *, the court *shall* determine disputed questions of fact as well as of law, and inquire into the facts by depositions taken on notice or in such other manner as may be according to the practice of the court.

The testimony taken before the tribunal, board or officer whose action is being reviewed may be used by any party and shall be considered by the court as if it had been taken by deposition on notice. Additional testimony may be taken by any party. * * *" (Emphasis supplied)

and *R. S.* 34:15–66, the appeal section of the workmen's compensation law, which stated: "Nothing herein contained shall be construed as limiting the jurisdiction of the supreme court to review questions of law and fact by certiorari."[1]

The 1947 Constitution not only gave this Court the direction to make rules governing practice and procedure in all

[1] Although prior to *Anderson*, the duty on *certiorari* to find compensation facts independently and anew had not been consistently or clearly imposed by the language of the opinions, thereafter, until the new court system the courts spoke of the obligation positively and uniformly. *E. g.*, *Gilbert v. Gilbert Machine Works*, 122 *N. J. L.* 533 (*Sup. Ct.* 1939) ; *Beerman v. Public Service Co-ordinated Transport*, 123 *N. J. L.* 479 (*Sup. Ct.* 1939) ; *Stetser v. American Stores Co.*, 124 *N. J. L.* 228 (*E. & A.* 1940) ; *Mixon v. Kalman*, 133 *N. J. L.* 113 (*E. & A.* 1945) ; *Breheny v. Essex County*, 134 *N. J. L.* 129 (*E. & A.* 1946) ; *Bodnar v. Florence Pipe Foundry and Machine Co.*, 136 *N. J. L.* 15 (*Sup. Ct.* 1947), aff'd 137 *N. J. L.* 205 (*E. & A.* 1948) ; *McCrae v. Eastern Aircraft*, 137 *N. J. L.* 244 (*Sup. Ct.* 1948). The same view was not, however, taken with respect to the review of the findings of other administrative agencies. *E. g.*, *Cook v. Board of Adjustment, Trenton*, 118 *N. J. L.* 372 (*Sup. Ct.* 1937) ; *Green v. Board of Commissioners of City of Newark*, 131 *N. J. L.* 336 (*Sup. Ct.* 1944) ; *Krilov v. Board of Adjustment of City of Newark*, 137 *N. J. L.* 39 (*Sup. Ct.* 1948).

courts, *Art.* VI, *Sec.* II, *par.* 3, and conferred upon the appellate tribunals power to exercise such original jurisdiction as necessary to the complete determination of any cause on review, *Art.* VI, *Sec.* V, *par.* 3, but also completely wiped out all the prerogative writs, with their ancient learning and procedural intricacies which had hampered the administration of justice in that field for so long. *Art.* VI, *Sec.* V, *par.* 4 provided:

"Prerogative writs are superseded and, in lieu thereof, review, hearing and relief shall be afforded in the Superior Court, on terms and in the manner provided by rules of the Supreme Court, as of right, except in criminal causes where such review shall be discretionary."

*R. S.* 2:81–8, previously quoted, prescribing the scope of review on *certiorari* fell with this constitutional change, although it was not formally purged from the statute books until it was not re-enacted in *Title* 2A, effective January 1, 1952.

Pursuant to the constitutional mandates, this court promulgated rules governing the practice in workmen's compensation appeals to the County Court and in matters formerly determined through the prerogative writs. As to the former, we have continued to recognize the legislative policy decision that the appeal from the Division should be *de novo* on the record in the County Court. *R. R.* 5:2–5(d). Procedure in lieu of prerogative writs was prescribed by Rule 3:81, now *R. R.* 4:88. It was provided that review of statutory proceedings in the Superior and County Courts shall be in the Appellate Division with the review to proceed in the same manner as appeals from the trial divisions. Rule 3:81–7 as amended March 25, 1949, now *R. R.* 4:88–7. Review of the final decision or action of any state administrative agency was directed to be by appeal to the Appellate Division, the appeal to proceed in the same manner as appeals from the trial divisions. Rule 3:81–8, now *R. R.* 4:88–8. It is most significant that from the very beginning of the new system, Rule 3:81–13 (now *R. R.* 4:88–13) prescribed:

"In proceedings [in lieu of prerogative writs] the Court shall have the power to review the facts and make independent findings thereon, which power may be exercised by it to such extent as the interests of justice may require."

Nothing could be clearer than that it was not intended that the Appellate Division should be *required* to make new and independent findings of fact in appeals in lieu of prerogative writs from statutory proceedings and state administrative agencies. The Appellate Division uniformly so held in compensation cases from its establishment in 1948 until the decision in *Russo*. See, *e. g., Carpenter v. Calco Chemical Division, American Cyanamid Co.,* 4 *N. J. Super.* 53 (*App. Div.* 1949); *Hagerman v. Lewis Lumber Co.,* 24 *N. J. Super.* 120 (*App. Div.* 1952), affirmed 13 *N. J.* 315 (1953); *Mewes v. Union Building & Construction Co.,* 45 *N. J. Super.* 88 (*App. Div.* 1957), certif. den. 24 *N. J.* 546 (1957). No obligation to make new fact findings has been judicially imposed or understood to be requisite in Appellate Division review under *R. R.* 4:88 of any other types of proceedings. We see neither any legal requirement since 1947 for the procedural doctrine of *Russo* nor any sound policy reason why there should be three, and possibly four, independent evaluations of the evidence and new fact findings in workmen's compensation cases alone.

The same result is reached on another possible approach adverted to by the analysis of Chief Justice Weintraub in his concurring opinion in *Russo,* 26 *N. J.,* at *p.* 442. See also the dissenting opinion of Justice Francis in *Ricciardi,* 26 *N. J.,* at *p.* 458. This approach rests on a different view of the nature of the matter before the County Court on the *de novo* appeal from the determination of the Division of Workmen's Compensation. When that appeal is placed by the Legislature, *N. J. S. A.* 34:15–66, and implementing rule of this Court, *R. R.* 5:2–5, in that tribunal sitting as a court, the case can be thought of as becoming a purely judicial proceeding in the judicial department and the function and judgment of that court as a judicial one in all respects, even though the matter

comes to it from an administrative and not a judicial body, albeit one which has "gradually acquired many of the attributes of a court" *Mulhearn v. Federal Shipbuilding and Dry Dock Co.*, 2 *N. J.* 356, 366 (1949). The County Court has the heavy obligation to bring a new mind to the case and conscientiously to reach its own independent determination. In this view, it is a little hard to think that the County Court, so acting, is a state administrative agency within *R. R.* 4:88-8 or perhaps even that the appeal there is a "statutory proceeding" of the nature contemplated by *R. R.* 4:88-7. Realistically, the court's function is more like that in its *de novo* review on the record of the judgment of a Municipal Court. If this approach were followed, a final judgment of the County Court in a compensation matter becomes essentially of the same quality as its judgment in any strictly legal action commenced in or brought to that tribunal and appeal therefrom would be to the Appellate Division under the general provisions governing appeals from it, *R. R.* 2:2-1(b), rather than pursuant to *R. R.* 4:88. The scope of review would then become that applicable to any other non-jury case, *R. R.* 1:5-4 (b), binding on the Appellate Division by *R. R.* 2:5, as recently fully discussed in *State v. Johnson, supra* (42 *N. J.*, at *pp.* 158–163). *R. R.* 1:5-4(b) is also one of permissive power, rather than mandatory direction, to make new or amended findings of fact, giving due regard to the opportunity of the one who heard the witnesses to judge of their credibility.

We conceive, however, that the scope of review by the Appellate Division is the same whether a compensation matter before it be thought of as an appeal from a state administrative agency or statutory tribunal or one from the final judgment of a County Court as in any ordinary legal action. The *power* to review the facts and make new or amended findings under *R. R.* 4:88-13 and 1:5-4(b) is identical in substance. The applicable criteria to determine when that power *should* be exercised ought likewise be the same. In *Johnson,* we expressly did not pass upon the ques-

tion in relation to the review of factual determinations made by administrative bodies, 42 *N. J.*, at *p.* 159, *n.* 1, but we now say the standard to govern appellate intervention with respect thereto is the same as that on an appeal in any nonjury case, *i. e.,* "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record," considering "the proofs as a whole," with due regard to the opportunity of the one who heard the witnesses to judge of their credibility. 42 *N. J.*, at *p.* 162, and, in the case of agency review, with due regard also to the agency's expertise where such expertise is a pertinent factor.

Reviewing the record before us on this basis we do not have the slightest doubt that the findings of the County Court, in accord with those of the Division, that the death here was causally related to the accident, were reasonably reached on sufficient credible evidence present on the whole record, that the finding was not a mistaken or unwarranted one and so should not be interfered with, and that therefore the award of compensation benefits based thereon was entirely correct (passing for the moment the question of eligibility of the after-born child). Lest the employer feel that it may have been prejudiced by the change of law as to the scope of review announced in this opinion, we have also considered the record under the *Russo* doctrine and our findings and conclusions on that approach are in complete agreement with those of the County Court.

It is not essential to recount the evidence with great particularity. Overall the proofs were unusually extensive and complete and the quality and substance of those offered by the claimant were especially strong. The treating physician who cared for Mr. Close during his hospitalization in Bayonne immediately following the coronary incident testified. His family physician in his home city of Baltimore who had cared for him for many years and who treated him from the time of his return from the Bayonne hospital until his death also testified. An autopsy was performed and the pathologist was a witness. The non-treating expert witnesses,

who appeared, one for each side, had examined the man during his lifetime. Full hospital records of all admissions were available to the medical witnesses. And there was lay testimony as to his condition during the 23-month period from accident to death. Indeed, there was little dispute as to the underlying medical facts and chronology. The difference between the parties rested almost completely in the opinion evidence as to whether, as the employer's expert said, he had recovered from the original episode and the death resulted from coronary insufficiency brought about solely by the progression of the preexisting sclerotic disease of the coronary arteries, or whether, according to the claimant's witnesses, the infarction resulting from the occlusion contributed in a material degree to that progression and the ensuing death.

There is no question but that Mr. Close's condition deteriorated steadily and rapidly after the accident. He was never able to return to any kind of work except a very light job for a six-week period about six months after the accident. He suffered repeated attacks of coronary insufficiency, four of which, including the terminal episode, required hospitalization. The autopsy showed that there had been no myocardial infarction subsequent to that resulting from the 1959 complete occlusion of the left anterior branch of the descending coronary artery and that death was caused by congestive heart failure due to an insufficient supply of blood for nourishment of the heart muscle. Physiologically, the blood insufficiency came about from the continued narrowing of the coronary arteries caused by the progress of the sclerotic disease. The employer's expert felt that the infarction had no real effect on this natural progression. The Baltimore treating physician, the pathologist and the claimant's non-treating expert all unequivocally stated that the previous substantial myocardial infarct materially contributed to the subsequent severity and rapidity of the degenerative sclerotic process, the repeated attacks of coronary insufficiency and the ultimate acute and terminal heart failure. We are of the opinion that

the claimant's proofs are more persuasive in this regard and we accept them as fact findings.

The question remains whether such findings in the factual complex here present are sufficient to ground a legal right to dependency benefits under the principles and guidelines laid down in *Dwyer v. Ford Motor Co., supra* (36 *N. J.* 487), and *Schiffres v. Kittatinny Lodge, Inc., supra* (39 *N. J.* 139). We think they unquestionably are. We find no merit in the employer's contention that the claimant's medical witnesses made mere conclusory statements rather than describing in detail the operative factors which led to their conclusions, as required by these cases. Their testimony was clearly explanatory to a high degree. Nor can we agree that *Schiffres* dictates the opposite end result here. What the employer really seems to be urging in this regard is that *Schiffres* precludes, almost as matter of law, an award of dependency benefits where an employee, who has an underlying heart condition, suffers an occlusion and infarction and dies a considerable period of time later from heart failure. The rationale of that decision was rather the opposite, *i. e.,* that there is no automatic relation of heart death to a prior compensable heart attack, but that medical causation to a material and substantial degree must be proved to establish a right to dependency benefits. In *Schiffres* the facts were vastly different and the requisite proofs of relationship and causation were just not there. Here they are, fully and in an eminently satisfying degree.

## II.

Having determined that compensation for death is properly payable, we must turn to the issue raised by the widow's cross-appeal from the holdings of both lower tribunals that a child conceived and born between the accident and death is not entitled to share in death benefits because dependency is to be determined as of the date of the accident. Here again is a proposition as to which we recently expressed doubt.

*McAllister v. Board of Education, Town of Kearny, supra*
(42 *N. J.*, at *p.* 59, *n.* 1).

The pertinent section of the compensation law is *N. J. S. A.*
34:15–13(g) :

"The term 'dependents' shall apply to and include any or all of the following who are dependent upon the deceased *at the time of accident or the occurrence of occupational disease, or at the time of death*, namely: Husband, wife, parents, stepparents, grandparents, children, stepchildren, grandchildren, child in esse, posthumous child, illegitimate children, brothers, sisters, half brothers, half sisters, niece, nephew. Legally adopted children shall, in every particular, be considered as natural children. *Dependency shall be conclusively presumed as to the decedent's widow and natural children under 18 years of age who were actually a part of the decedent's household at the time of his death.* * * *" (Emphasis supplied)

While our original compensation act provided for benefits to dependents where death resulted from a compensable accident, it contained no definition of or eligibility provisions relating to dependents. *L.* 1911, *c.* 95, § 12. This feature was added through amendment of the section by *L.* 1913, *c.* 174, § 2 in substantially the same form as now found in *N. J. S. A.* 34:15–13(g), except for the provision therein as to dependency "at * * * the occurrence of occupational disease." This phrase was added by *L.* 1945, *c.* 74, after occupational diseases had been made compensable.

There should also be noted a further amendment, *L.* 1913, *c.* 174, § 1, which added another aspect to the original law. It is now incorporated in almost identical form in *N. J. S. A.* 34:15–12(e), where it reads:

"In case of the death of the person from any cause other than the accident or occupational disease, during the period of payments for permanent injury, the remaining payments shall be paid to such of his or her dependents as are included in the provisions of said section 34:15–13. * * *."

The lower tribunals felt controlled by *Wathne v. Midland Construction & Contracting Co.*, 125 *N. J. L.* 473 (*Sup. Ct.* 1940), and *Fitzsimmons v. Federal Shipbuilding & Dry Dock*

*Co.,* 4 *N. J.* 110 (1950). The latter, a 4–3 decision of this Court in which no dissenting opinion was filed, simply followed the statement made in *Wathne* that the statutory section was to be construed to mean that "* * * the number and identity of dependents should be determined as of the date of the accident where death arose out of the accident * * *." 125 *N. J. L.,* at *p.* 476. Neither of these cases, however, involved the factual situation before us, *viz.,* a child conceived and born between the accident and the death who was actually a part of the decedent's household at the time of his death. This precise question has never been passed upon by an appellate tribunal in this State.

In *Wathne,* the dependents involved were a daughter and three grandchildren of the workman, who resided with and were dependent upon him at the time of the accident but had left his household and ceased to be dependents by the time of his death more than two years later. Dependency benefits were held properly awarded on the thesis above quoted. In *Fitzsimmons,* the employee, his wife and seven children were living together at the time of the accident. About a year before his death he ceased all family support and shortly thereafter was ejected from the home and never returned. The wife and children were held entitled to dependency benefits. It may be noted that in both cases the statute was construed so as to award benefits to family members rather than to deny them.

*N. J. S. A.* 34:15–13(g) is certainly no model of clarity in setting forth three unexplained alternative dates for the determination of dependency: "at the time of accident, *or* the occurrence of occupational disease, *or* at the time of death." (Emphasis supplied) If the time of accident, or the occurrence of disease where that situation is involved, was intended to be the absolute, the reference to the time of death is confusing and, indeed, seems superfluous. *Wathne* sought to answer this obvious difficulty by saying that the time of death had reference only to the ascertainment of dependents entitled to share in unpaid permanent disability compensation benefits

on the death of the employee from any cause other than the accident or occupational disease pursuant to *N. J. S. A.* 34:15-12(e). This construction must rest on a conclusion of extremely awkward legislative draftsmanship. One would think that the reference therein to the dependency benefits section was intended only to denominate thereby the general class of persons entitled to be considered as dependents and, conversely, that *N. J. S. A.* 34:15-13, which deals only with compensation for death would not have included the phrase relating to dependency "at the time of death" only to accommodate a different subject matter covered by another section.

 Be that as it may, we think that the phrase just mentioned has to be considered, insofar as the precise problem before us is concerned, in the light of the subsequent sentence of *N. J. S. A.* 34:15-13(g) stating that "[d]ependency shall be conclusively presumed as to the decedent's widow and natural children under 18 years of age who were actually a part of the decedent's household at the time of his death." That sentence, and particularly the concluding reference therein to the time of death, must have been intended to have some meaning. At the very least an ambiguity is created, when it is read in conjunction with the earlier reference to the determination of dependency as of the time of death. We think a reasonably possible meaning is that dependency shall be determined as of the time of death rather than the date of accident insofar as the widow and natural children under 18 years actually a part of the employee's household at the time of death are concerned. Under the axiomatic principle that the language of the workmen's compensation act must be liberally construed in favor of the claimant, we think we should give it that meaning, which will entitle a child conceived and born between the accident and death to share in the death benefits which it will so sorely need by reason of the death of its parent. We cannot conceive of the Legislature's intending anything but that humanitarian result. This disposes of the precise issue before us and we need go no further at this time.

The judgment of the County Court is affirmed except as to the denial of benefits to the after-born child and the matter is remanded to that tribunal for correction of the judgment to award such benefits.

PROCTOR, J. (concurring). I am the only member of the present court who joined in the majority opinion in *Russo v. United States Trucking Corp.*, 26 *N. J.* 430 (1958). Upon reconsideration of *Russo*, I am convinced that my position in that case was erroneous. I therefore subscribe fully to that part of the opinion in the present case which overrules the *Russo* doctrine, as well as the balance of the opinion.

*For affirmance* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For reversal*—None.