IN RE IN THE MATTER OF THE PETITION OF SUBURBAN TRANSIT CORP. FOR A PERMANENT AND NEGOTIATED INCREASE IN RATES OF FARE PURSUANT TO *N.J.S.A.* 48:2–21 AND *N.J.S.A.* 48:2–21.1.

Superior Court of New Jersey
Appellate Division

Argued September 15, 1981—Decided October 2, 1981.

Before Judges BOTTER, ANTELL and FURMAN.

*Linda S. Lodenkamper*, Assistant Deputy Public Advocate, argued the cause for appellant Public Advocate (*Stanley C. Van Ness*, Public Advocate, attorney; *Alfred L. Nardelli*, Deputy Public Advocate, of counsel).

*Michael J. Marzano* argued the cause for respondent Suburban Transit Corp.

*James R. Zazzali*, Attorney General, for respondent Department of Transportation (*John J. Degnan*, former Attorney General; *Stephen Skillman*, Assistant Attorney General, of counsel; *Lawrence A. Goldman*, Deputy Attorney General, on statement in lieu of brief).

PER CURIAM.

The Public Advocate appeals from an order of the Department of Transportation (DOT) granting intrastate bus fare increases to respondent Suburban Transit Corporation (Suburban) on two interstate routes, designated the Princeton and South Plainfield routes, and three intrastate recreational routes, designated the Asbury Park, Atlantic City Race Track and Garden State Race Track routes.

The prior bus fares on these routes were set in 1974. DOT rejected the recommendation of the administrative law judge (ALJ), subsequent to a formal hearing before him, that the application for intrastate fare increases be denied on the Princeton and South Plainfield routes and granted, but in lower percentages than proposed, on the Asbury Park and Atlantic City Race Track routes. DOT granted the proposed intrastate fare increases on all five routes, including the fare increase recommended by the ALJ on the Garden State Race Track route which has not operated since the race track buildings burned down in 1975.

Both parties to the appeal stipulate that the exception in *N.J.S.A.* 48:2–21.2, subd. 1(b) is applicable to Suburban's application, that is, that its rate base need not be found because its gross operating revenues for the preceding year exceeded the

depreciated book value of its property used and useful in its business as a bus company. *N.J.S.A.* 48:2–21.2 provides further that, in prescribing a just and reasonable rate, the agency with jurisdiction "shall, in its determination, make a finding of the facts on the basis of which it prescribed such rate, fare or charge."

DOT substantially accepted the ALJ's fact findings with respect to the Asbury Park routes. The fare increase granted by the ALJ on this route was based on a calculation of allocable expenses and revenues. Average expense per mile in all Suburban operations was multiplied by actual travelled miles on this route. Calculating the volume of travel by the actual number of passengers in the base year 1979, the ALJ then set fares to provide revenues offsetting expenses.

■ Without expressing its disagreement with the ALJ's calculation of operating expense per mile, DOT, in granting the percentage increase proposed by Suburban for the Asbury Park route, implicitly adopted Suburban's calculation of operating expense per mile, not the ALJ's. We agree with Suburban's contention that the sale of retired equipment in the amount of $82,250 in the base year, a credit against depreciation expense in that year, should not have been continued as a credit against depreciation expense for rate making purposes.

■ With this revision by DOT, the fare increase granted on the Asbury Park route by DOT was in accordance with findings reasonably reached on sufficient credible evidence in the record and should be sustained on appeal. *Close v. Kordulak Bros.*, 44 *N.J.* 589, 599 (1965).

Neither DOT nor the ALJ states findings of facts on the basis of which substantial fare increases for the Atlantic City Race Track route were set, contrary to the requirement of findings in *N.J.S.A.* 48:2–21.2. Due to declining ridership, this route has not been operating. Another Suburban intrastate route is in operation for casino patrons into Atlantic City, several miles

further than the race track. Fares were set for that route in 1978.

■ The ALJ recommended that fares be increased on the Atlantic City Race Track route by 111%. The Public Advocate seeks a vacation of DOT's grant of a further fare increase of 148% to 175%. But any fare increase on this route, whether 111% or higher, is unexplained and unsupported in the record. We are constrained to reverse the order for a fare increase on the Atlantic City Race Track route.

■ The fare increase on the defunct Garden State Race Track route must also be reversed. That fare increase was granted without current data on volume of travel and without evidence of any present plan to rebuild the race track.

■ In denying the application for fare increases on the Princeton and South Plainfield routes, both of which terminate in New York City, the ALJ pointed to the deficiencies in Suburban's proofs. Without finding a rate base, DOT was required under *N.J.S.A.* 48:2–21.2 to determine the reasonableness of the proposed fares on the basis of findings of fact, such as the ratio of intrastate revenues to expenses allocated to intrastate operations and the comparability of competitors' routes. Under *N.J.S.A.* 48:2–21 Suburban bore the burden of proof of the reasonableness of the proposed fare increases.

■ That burden of proof was not met, in our view. As the ALJ suggested, Suburban might have established its intrastate revenues by averaging mileage per zone of travel and the comparability of competitors' routes by comparing, for example, mileage, number of passengers and traffic delays and other conditions on roadways travelled. No such proofs were offered.

DOT based its order upon extraneous or background factors which fail to establish the reasonableness of the ·33% fare

increases on the Princeton and South Plainfield routes: Suburban's last intrastate fare increase was granted in 1974; since 1974 its interstate fares have increased by 51% to 63%; Suburban is not provided with financial and capital assistance from the New Jersey Transit Corporation, whereas all other bus carriers in its service area are State subsidized; the intrastate fares charged by such competitors are nevertheless higher than Suburban's; despite the posting of notice of the formal hearing no member of the public opposed Suburban's application for fare increases.

On the record there is no proof whatsoever that the intrastate fare increases granted on the Princeton and South Plainfield routes would not result in excessive profits to Suburban.

One other issue is raised on appeal. The Public Advocate challenges the 91% to 111% fare increase granted by DOT for Weehawken passengers on the Princeton route. DOT determined, contrary to the ALJ's recommendation, that the length and expense of the intrastate trip to Weehawken parallels the length and expense of the interstate trip to New York City, for which a substantially higher fare is charged. At oral argument Suburban conceded that the average number of intrastate passengers to Weehawken is only two per week. Thus the impact of the intrastate fare to Weehawken is minimal. Nor are the proofs sufficient to support the reasonableness of the 91% to 111% fare increase granted by DOT. Any contention that the pre-existing intrastate fare is discriminatory in favor of Weehawken passengers and against interstate passengers may be advanced and dealt with upon Suburban's refiling an application for intrastate fare increases on the Princeton route.

We affirm the DOT order granting a fare increase on the Asbury Park route. We reverse the DOT order granting fare increases on the Princeton, South Plainfield, Atlantic City Race Track and Garden State Race Track routes without prejudice to

Suburban's refiling an application for intrastate fare increases on those four routes. We do not retain jurisdiction.