753 A.2d 737

AC&C DOGS, LLC, PETITIONER–APPELLANT, v. NEW JERSEY DEPARTMENT OF LABOR, RESPONDENT–RESPONDENT.

AC&C DOGS, INC., PETITIONER–APPELLANT, v. NEW JERSEY DEPARTMENT OF LABOR, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 3, 2000—Decided July 5, 2000.

Before Judges STERN, WEFING and STEINBERG.

*Harold Leib* argued the cause for appellants (*Harold Leib & Associates*, attorneys; *Mr. Leib* and *Robert C. Hess,* on the brief).

*John C. Turi,* Deputy Attorney General, argued the cause for respondent (*John J. Farmer, Jr.,* Attorney General, attorney;

*Mary C. Jacobson*, Assistant Attorney General, of counsel; *Mr. Turi*, on the brief).

The opinion of the court was delivered by

WEFING, J.A.D.

AC&C Dogs, LLC and AC&C Dogs, Inc. (AC&C)[1] appeal from a final administrative action of the Commissioner of Labor finding them liable for the payment of certain unemployment taxes. After a careful review of the entire record in this matter, we reverse.

The record that was created in this matter is somewhat spare. The contested issue was responsibility for payment of these taxes. There was no dispute as to amount. The Department of Labor presented one witness, Richard Simmons, an auditor; large portions of his testimony consisted of reading his audit report. The Administrative Law Judge (ALJ), who heard this matter, struck portions of that report on the ground it was unsupported hearsay. AC&C presented two witnesses, Richard Serale, its principal, and Dennis Gallagher, a vendor.

AC&C is located in Atlantic City, New Jersey. It rents hot dog carts to individuals who then cook and sell hot dogs to the passing public. Atlantic City has, by ordinance, regulated who may engage in such sales. It requires they be licensed by the City; in order to obtain a vending license, an individual must be licensed under *N.J.S.A.* 45:24–9 to –13. The City has further restricted who may obtain such vending licenses by requiring that vending units be operated and attended by honorably discharged veterans. ATLANTIC CITY N.J. CODE § 145–23F (1994). The City has also, by ordinance, restricted the locations at which such licensed individuals may sell their wares. The Code provides for what it terms at-

---

[1] The Department of Labor issued separate assessments against AC&C Dogs, LLC and AC&C Dogs, Inc. The matters were consolidated at the hearing. We infer from the record that AC&C Dogs, LLC is in some manner the successor to AC&C Dogs, Inc.

large locations and designated locations. §§ 145–20; 145–23D, E, and V. The City has, further, limited the number of active vending licenses to one hundred twenty-five. § 145–18. (Richard Simmons testified that there were more than four hundred licensees; we are unable, from this record, to account for that disparity.)

Under the City's ordinance, there are forty designated locations in the City at which vending is permitted. To treat all licensees fairly, the City assigns such designated vending locations on a rotational basis. § 145–24. It posts a schedule on a monthly basis.

Beyond restricting sales on the Boardwalk, the City ordinance does not specify what items an individual may sell at a given location; nor does it require an individual to vend a certain minimum number of days or hours to maintain a vending license. It does, however, specify that a vendor can leave the vending unit for no more than twenty minutes at a time and cannot take such a break more than once every two hours. § 145–23F. It also directs that carts such as those provided by AC&C shall not be on the streets and sidewalks of the City between 6:00 a.m. and 9:30 a.m. § 145–23(A).

AC&C's business is limited to supplying hot dog carts to licensed vendors who wish to sell hot dogs on a given day. A vendor calls AC&C and asks to have a cart delivered to a named location at a specified time. Generally, the cart comes equipped with hot dogs, buns and condiments. At the end of the day, AC&C picks up the cart and the vendor pays a rental charge, based upon the number of hot dogs sold during the day.

AC&C does not require, however, that a vendor obtain his food stock from AC&C; he is free to purchase his own food supplies if he believes it is to his economic benefit. In such an instance, AC&C charges a flat fee for cart rental. AC&C supplies a suggested price list; a vendor, however, is free to set his own prices and to expand the menu by buying his own chili or cheese and offering such items as chili dogs or cheese dogs at whatever prices he deems appropriate.

AC&C is not the only company that supplies hot dog carts to licensed vendors in Atlantic City; there are at least two other such businesses. The vendors are free to select the company with which they wish to deal. Vendors may determine to obtain their carts from different suppliers on different days. They are also free to decide, on any given day, whether to sell foodstuffs other than hot dogs, for instance, ice cream. In such an eventuality, they would not deal with AC&C, but with a different entity that would supply an ice cream vending cart. And, of course, they are free to decide not to vend at all. The hot dogs are in no way identified to the consumer as coming from AC&C and the vendors display no AC&C identification. The vendors thus achieve no competitive benefit with the public by vending from a cart supplied by AC&C, as opposed to another supplier.

AC&C has no power to control either the manner in which the vendors conduct their businesses or the locations they select. All of those details are controlled by the City. A large number of the vendors with whom AC&C deals vend on a part-time basis, either because they have other, full-time positions, or because of their own individual preferences.

The ALJ issued a decision, adopted by the Commissioner of Labor, in which he concluded that AC&C was required to make unemployment tax payments on behalf of the vendors with whom it dealt because AC&C had failed to establish it was exempt under the "ABC" test set forth in *N.J.S.A.* 43:21–19(i)(6). That statute provides:

Services performed by an individual for remuneration shall be deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the division that:

(A) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

(B) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(C) Such individual is customarily engaged in an independently established trade, occupation, profession or business.

The ALJ concluded that although AC&C had satisfied subsection (A), it had failed to establish either subsection (B) or (C) and was thus responsible for the payments.

 We recognize the limited scope of our review of such matters. *Henry v. Rahway State Prison*, 81 *N.J.* 571, 579–80, 410 *A.*2d 686 (1980); *Close v. Kordulak Bros.*, 44 *N.J.* 589, 210 *A.*2d 753 (1965). That limited scope, however, is generally confined to review of questions of fact, as opposed to questions of law. While the legal interpretation adopted by an administrative body charged with the responsibility for administering a certain body of law is certainly entitled to deference, it is by no means controlling on us. *Carpet Remnant Warehouse, Inc. v. New Jersey Dep't of Labor*, 125 *N.J.* 567, 587, 593 *A.*2d 1177 (1991); *Mayflower Secs. Co. v. Bureau of Secs.*, 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973).

 Here, the ALJ concluded that AC&C was subject to the "ABC" test because, in his view, the vendors were rendering services to AC&C in return for remuneration. He reached that conclusion because, in his words, "it was only through the vendors that AC&C Dogs received an economic benefit. . . ."

 We consider that analysis flawed, however. The statute does not make responsibility for unemployment contributions contingent upon receipt of an economic benefit; if it did, it would be difficult to envision an economic relationship that could be exempted. Rather, it refers to remuneration for "services." "The implication of this section is that the remuneration flow from the putative employer to the alleged employee." *Koza v. New Jersey Dep't of Labor*, 307 *N.J.Super.* 439, 444, 704 *A.*2d 1310 (App.Div. 1998). Here, of course, just the reverse obtains.

We have not hesitated to recognize that certain working relationships are not subject to the "ABC" test in light of their particular factual complexes. *Id.* at 443–44, 704 *A.*2d 1310, (holding that a group of musicians who played together was a cooperative enterprise and the individual who secured bookings, paid

expenses and divided the net proceeds among the players was a conduit, as opposed to an employer).

Within *Koza*, we recognized the importance of "follow[ing] the money" in any analysis of a particular working relationship. *Id.* at 444, 704 *A.2d* 1310. In the case at hand, AC&C does not sell hot dogs to the public and is, by Atlantic City Code, precluded from engaging in such food vending. The money in this instance is generated by the vendors' retail sales to the public, a portion of which is returned to AC&C. This may represent either a rental charge only, if the vendor stocks the cart with his own foodstuffs, or a combination rental charge and cost of supplies, if he selects a fully-stocked cart.

We are satisfied that under the particular factual complex presented in this matter, the vendors are not providing a service to AC&C in exchange for remuneration and, in consequence, AC&C has no responsibility to pay unemployment taxes on their behalf.

Reversed.