**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1324-15T1

KEVIN ROY,

    Petitioner-Respondent,

v.

MARSDEN & SONS ELECTRIC,

    Respondent-Appellant.

_____

Submitted December 19, 2016 — Decided August 9, 2017

Before Judges Nugent and Currier.

On appeal from Department of Labor and Workforce Development, Division of Workers' Compensation, Claim Petition No. 2011-32131.

Carpenter, McCadden & Lane, LLP, attorneys for appellant (Christopher R. Bridgman, on the brief).

Petro Cohen Petro Matarazzo, PC, attorneys for respondent (Janis A. Eisl, on the brief).

PER CURIAM

This is a workers' compensation action. Respondent Marsden Electric appeals from an October 16, 2015 order for judgment on petitioner Kevin Roy's Application for Review or Modification of

Formal Award ("re-opener"). The order for judgment awarded petitioner forty-two and one-half percent of partial total permanent disability, an increase of twenty percent.

On appeal, respondent argues petitioner presented insufficient credible medical evidence to prove his partial total disability increase from twenty-two and one-half percent to forty-two and one-half percent. Having considered respondent's arguments in light of the record and applicable legal principles, we reject the argument and affirm the order for judgment.

These are the facts. On July 26, 2011, while working on a ladder during the course of his employment with respondent, petitioner fell eight to ten feet. Five months after his accident, petitioner filed a workers' compensation employee's claim petition in which he alleged he was partially disabled as a result of injuries to his lumbar spine. His workers' compensation claim was resolved when a Judge of Compensation ("JOC") entered an October 2, 2012 order approving settlement. The settlement resulted in an award to petitioner of twenty-two and one-half percent of partial total permanent disability "for orthopedic and neurologic

residuals of the lumbar spine for a compression fracture at L1 and L2 and for a bulging disc at L5-S1."[1]

Slightly less than two years after the JOC entered the order approving settlement, petitioner filed the re-opener. He alleged he had "suffered an increase in disability since the entry of the prior Award." Following the exchange of discovery, petitioner's claim was scheduled for a hearing on October 16, 2015.

Petitioner and respondent waived their right to present expert witnesses and agreed to have the JOC decide the case based on petitioner's testimony and twenty-one documentary exhibits the parties entered into evidence by agreement. The first thirteen exhibits consisted of medical records concerning petitioner's treatment from the date of his accident through the order approving settlement of the original claim. The next four exhibits included medical records concerning petitioner's resumption of treatment in 2014, the report of a December 17, 2014 MRI scan of petitioner's lumbar spine, and the reports of petitioner's evaluating physician concerning petitioner's increased disability. The final four exhibits consisted of four medical reports, two concerning respondent's doctor's medical evaluation following petitioner's

[1] The medical records and pleadings are not consistent in describing the fractures. Some describe the fractures at L1 and L2, others at L1 and L5. The parties do not appear to dispute the second compression fracture occurred at L5.

fall from the ladder, and two concerning respondent's medical expert's evaluation of petitioner for the re-opener.

Following the 2012 order approving settlement, petitioner next consulted a doctor on November 13, 2014. Dr. Joseph R. Zerbo's report of the visit summarizes the relevant history:

> [Petitioner] is a 45 year old right[-]handed male who presents today for spinal re[-]evaluation regarding progressive worsening of low back pain stemming from an initial work-related injury on 7/26/11. I initially saw [petitioner] on 7/27/11 at the Trauma Center at Atlanticare Regional Medical Center after he sustained a fall at work from approximately 10 feet. [Petitioner] was diagnosed with compression fractures of the lumbar spine at L1 and L2. We initially treated [petitioner] with a lumbosacral orthosis which was worn for approximately three months. This was removed and [petitioner] was started in a formal physical therapy program. Physical therapy was performed three times a week at NovaCare in Rio Grande. This also included a work hardening program. Once the work hardening program completed, [petitioner] did undergo Functional Capacity Evaluation at Kinomatic Consultants on 3/14/12. This did allow [petitioner] to return to full[-]time full duty work.
>
> Unfortunately, [petitioner] states that he has continued to deal with progressively increasing low back pain associated with occasional numbness and paresthesias in the lower extremities bilaterally. He has physical restrictions with any type of prolonged sitting, standing, walking, bending, or lifting secondary to the pain. [Petitioner] describes no other injuries to his low back since the work accident of 7/26/11.

Dr. Zerbo recommended petitioner obtain a new MRI study of the lumbar spine. The MRI scan was completed on December 17, 2014. According to the report of the physician who evaluated the MRI scan, the scan revealed the following: mild scoliosis; old compression fractures of L1 and L5; disc bulge at L4-5, minimal disc bulges at L3-L4 and L5-S1, with no significant spinal stenosis or visible nerve root compression, and no focal disc herniation; and suspected cholelithiasis.

On January 8, 2015, Dr. Zerbo met with petitioner after reviewing the MRI. Dr. Zerbo diagnosed petitioner's condition as "internal disc derangement at L4-5 and L5-S1 producing discogenic lumbar syndrome." According to Dr. Zerbo, the MRI also confirmed petitioner's previous fractures had "healed satisfactorily." Dr. Zerbo recommended petitioner consider surgery, which would involve posterior lumbar inter-body fusion at L4-5 and L5-S1, if petitioner's physical capacities "are of such a debilitating degree." Petitioner declined to undergo surgery. Dr. Zerbo discharged him from active care.

Dr. John L. Gaffney, board certified in family medicine, evaluated petitioner. Dr. Gaffney noted he had evaluated petitioner on April 17, 2012, in reference to the injuries petitioner had sustained in the July 26, 2011 work accident.

A-1324-15T1

Dr. Gaffney's physical examination of petitioner revealed petitioner had "difficulty transferring positions from a supine to sitting to standing position due to his spinal pain." Petitioner also had spasm and tenderness over the paralumbar muscle regions of the lumbar spine. According to Dr. Gaffney's report, "[t]here is sensory deficit with pinprick into the bilateral extremities, over the L4-L5 and L5-S1 dermatomal region." Certain clinical tests Dr. Gaffney considered objective were positive for pain, and petitioner had limited range of motion of the lumbar spine.

Based on Dr. Gaffney's review of relevant medical records and examination of petitioner, he rendered the following diagnosis: orthopedic residuals for a compression fracture of superior endplate of L1, and compression fracture of the superior endplate of L2; new progressive lumbar disc injury with bulging disc at L3-L4 and L4-L5, and a disc osteophyte complex and L5-S1; persistent and progressive lumbar radiculopathy; lumbar fibromyositis syndrome; and chronic pain in the lumbar spine.

Dr. Gaffney opined, within a reasonable degree of medical probability, that petitioner's injuries were directly and causally related to the work-related accident of July 26, 2011. According to Dr. Gaffney's report, the injuries "have produced demonstrable objective medical evidence of restriction of function and

lessening of a material degree of working ability, as well as interferences with ability to perform activities of daily living[.]" Dr. Gaffney concluded: "The objective medical findings . . . have resulted in an increase of 45 percent permanent/partial disability in reference to the lumbar spine, above the previously noted award of compensation."

Respondent's evaluating physician, Francis C. Meeteer, examined petitioner on July 14, 2015. The doctor had not previously evaluated petitioner. Unlike Dr. Gaffney, Dr. Meeteer found no tenderness or spasm when he examined petitioner's lumbar spine. Clinical tests were generally negative. Dr. Meeteer concluded:

> As a result of my findings as outlined above, it is my opinion that [petitioner] has a [five percent] permanent partial total disability due to his chronic lumbar or low back pain with compression fracture at L1 and L5 and disc bulging of the lumbar spine as outlined above that occurred as the result of the work-related accident on July 26, 2011. My opinions are stated within a reasonable degree of medical certainty.

Petitioner testified at the hearing. He claimed his condition was considerably worse than when the settlement was approved in October 2012. In 2012, he experienced a severe, stabbing pain in his back that radiated down to both feet, but lasted maybe an hour and occurred only a few times each month. He rated the pain as a

three or four.  According to petitioner's testimony during the re-opener hearing in 2015, however, the sharp shooting pain radiating through the sides of his buttocks, throbbing down his legs, and causing his toes to tingle, was "there constantly."

In 2012, the pain would waken him from a night's sleep occasionally.  By the 2015 hearing, the pain woke him two or three times each night.  He was unable to sleep through the night.  He was also unable to lay on his side, and discomfort and a sharp shooting pain wakened him.

In 2012, petitioner could walk three miles and lift objects weighing approximately thirty to forty pounds.  Otherwise, he generally led a sedentary life.  Now, petitioner no longer walks long distances due to fear that he may not be able to "walk back"; leaves his shoes tied and uses a long shoe horn to put his shoes on, because he can no longer bend down to do so; and seldom lifts objects that weigh more than a grocery bag.

The parties agreed that from the documentary evidence and petitioner's testimony, the JOC had to determine whether petitioner sustained an increase in his permanent disability and, if so, to what extent.  As previously noted, the JOC found petitioner sustained a twenty-percent increase in his disability.

In an oral opinion delivered from the bench at the conclusion of the hearing, as amplified in a January 15, 2016 written

decision, the JOC reiterated the sole issue before her was whether an increase in petitioner's previous award was justified and, if so, in what amount. The JOC found petitioner testified "candidly and credibly." She noted that during his testimony petitioner was in "obvious distress." The distinctions he made between his pain, disabilities, and functional losses between 2012 and 2015 were corroborated by the recent MRI findings.

The JOC noted that only petitioner's evaluator, Dr. Gaffney, evaluated him in both 2012 and 2015. Different medical experts performed evaluations for respondent in 2012 and 2015. The JOC found Dr. Gaffney's evaluation more credible than that of Dr. Meeteer "as to the consistency of the findings . . . when compared to the diagnostic evidence[.]" The JOC noted "Dr. Gaffney is the only medical doctor who had the benefit of [completing a] full term . . . case evaluation — both pre-the first settlement in 2012 and after that settlement for this re-opener in 2015[.]"

Significantly, the JOC determined that the treating records, diagnostic studies, and a functional capacity examination enabled her to note the diagnostic changes that had occurred during the intervening years. Based on petitioner's credible testimony, the explicit descriptive differences in his functionality between the first settlement and the hearing on his re-opener, as well as the medical records and diagnostic tests, the JOC determined there was

"a new progressive lumbar disc injury with MRI evidence of bulging disc at L3-4 and L4-5 and disc osteophyte complex at L5-S1 with internal disc disruption/derangement at L5-S1 with bilateral radiculopathy superimposed upon prior compression fracture of two lumbar superior end plates."

The JOC concluded the "award of an increase of twenty [percent] is consistent with all of the records, diagnostics, petitioner's testimony and his multiple evaluating doctor's reports which were taken in as testimony."

On appeal, respondent argues there was insufficient credible medical evidence, and insufficient testimony from petitioner, to prove his partial total disability increased from twenty-two and one-half to forty-two and one-half percent. Respondent initially asserts petitioner "did not present credible medical evidence causally relating such an increase in disability to the original incident and resulting injury." Respondent acknowledges that Dr. Gaffney's report includes the statement, "the injuries noted are directly and causally related to the work-related accident, which occurred on July 26, 2011"; but asserts Dr. Gaffney "provided no basis or detail surrounding his opinion as to causation besides a mere conclusory statement."

Respondent goes on, however, to acknowledge the new evidence of petitioner's L3-4 and L4-5 bulging lumbar discs is causally

related to the original accident, as admitted by respondent's evaluating physician. Respondent asserts these "are the only possible injuries for which [petitioner] has met his burden of proof for an increase in disability," but further asserts "[a]n increase from [twenty-two and one-half] to [forty-two and one-half] percent permanent partial total is excessive for a disc bulge at L4-5 and minimal bulge at L3-4."

Parsing the medical evidence rather than considering it as a whole, respondent asserts some of the JOC's findings are unsupported by the record. Respondent also argues petitioner's testimony was inadequate to support an increase in partial permanent disability of twenty percent "by a preponderance of the evidence."

The scope of our review is well established.

> In workers' compensation cases, . . . appellate review is limited to "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, with due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility."
>
> [Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 262 (2003) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)).]

"Deference must be accorded the factual findings and legal determinations made by the [JOC] unless they are 'manifestly

unsupported by or inconsistent with competent relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Perez v. Monmouth Cable Vision, 278 N.J. Super. 275, 282 (App. Div. 1994), certif. denied, 140 N.J. 277 (1995)).

Having considered petitioner's arguments in light of these principles and the hearing record, we affirm the JOC's decision. Her decision is supported by sufficient credible evidence on the record as a whole. Petitioner's arguments to the contrary are without sufficient merit to warrant extended discussion. R. 2:11-3(e)(1)(D) and (E). We add only these brief comments.

Respondent's argument is based largely on parsing out and isolating different parts of various medical records and reports, rather than construing them as a whole. In addition, respondent is critical of petitioner's expert's reports because the reports' explanations concerning the extent of petitioner's increased disability and the causal relation of that increase to the original accident does not contain sufficient elaboration. Yet, by agreeing to present the medical evidence in reports rather than by experts' testimony, respondent now criticizes the JOC for doing precisely what the parties tasked her with doing; namely, reviewing the documentary evidence as a whole and determining the credibility

of conflicting reports based on all the documentary evidence as well as petitioner's testimony. That is precisely what the JOC did, and her findings are amply supported by the documentary evidence and petitioner's testimony.

Although not entirely clear, it appears that respondent concedes petitioner suffered some increased disability. Respondent insists, however, that a newly diagnosed condition, documented on MRI, could not have possibly caused a twenty percent increase in petitioner's partial permanent disability. That determination, however, is well within the expertise of a JOC, with respect to whom our standard of review is deferential. Respondent has pointed to nothing in the record, and particularly nothing in the medical records and expert reports, that provide us with either a methodology or basis for questioning the JOC's quantification of petitioner's increased disability.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION