**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3350-15T2

UNIVERSITY PHYSICIANS
ASSOCIATES,

    Petitioner-Appellant,

v.

TRANSPORT DRIVERS, INC.,

    Respondent-Respondent.

_____

        Argued April 6, 2017 — Decided August 22, 2017

        Before Judges Hoffman and Whipple.

        On appeal from the Division of Workers'
        Compensation, Department of Labor, Claim
        Petition No. 2013-18665.

        Robert A. Solomon argued the cause for
        appellant (Robert A. Solomon, PC, attorneys;
        Mr. Solomon, of counsel and on the briefs).

        Edward C. Kein argued the cause for respondent
        (Cipriani & Werner, PC, attorneys; Mr. Kein,
        on the brief).

        Susan Stryker argued the cause for amicus
        curiae Insurance Council of New Jersey
        (Bressler, Amery & Ross, PC, attorneys; Ms.
        Stryker, of counsel and on the brief).

PER CURIAM

Petitioner University Physicians Associates[1] appeals from the March 22, 2016 order entered by the Division of Workers' Compensation (Division) dismissing its claim petition with prejudice. Petitioner argues the Division should have concluded defendant Transport Drivers, Inc. (Transport) owed it $53,793.52. We disagree and affirm the trial court.

I.

On October 10, 2012, a pallet dropped from a forklift and seriously injured Manuel Bonilla, a Transport employee. An ambulance transported Bonilla to University Hospital (Hospital), a Level I trauma center in Newark. There, he received treatment for his injuries, including a left hip dislocation and left acetabular fracture. First, Dr. David Livingston, a general surgeon, completed a hip relocation procedure on Bonilla "under conscious sedation." Two days later, Dr. Mark Adams, an orthopedic surgeon, performed "[o]pen reduction and internal fixation" surgery, under general anesthesia, to repair Bonilla's acetabular fracture. Dr. Livingston billed $10,343 for his services ($952 for consultation and $9391 for the hip relocation), and Dr. Adams

---

[1]   Petitioner is a professional practice group of the faculty of the Rutgers New Jersey Medical School (previously UMDNJ). As appointed faculty members of the medical school, all physicians must operate a private practice and do so through petitioner.

billed $71,374 for his services. Both doctors billed at the ninety-fifth percentile.

As billing agent[2] for the doctors, petitioner received reimbursement from respondent's workers' compensation carrier pursuant to the New Jersey Workers' Compensation Act (the Act), N.J.S.A. 34:15-1 to -146.[3] The carrier paid $3688.98 for Dr. Livingston's treatment and $24,234.50 for Dr. Adams' treatment. The payments made were at the seventy-fifth percentile, which the respondent's insurer considered the industry standard in New Jersey. Dissatisfied with the payments received, petitioner filed a petition to recover the remaining $53,793.52.

The Division held a trial over three days; as stipulated by the parties, the only matter at issue was the determination of the usual, customary, and reasonable (UCR) charges for the services provided by Dr. Livingston and Dr. Adams.

Petitioner presented only two witnesses: Dr. Livingston and petitioner's chief financial officer (CFO). Addressing Dr.

---

[2] Both Dr. Livingston and Dr. Adams belong to an independent trauma group associated with petitioner, but are required to use petitioner to submit their bills.

[3] Section 15 of the Act provides, in relevant part, that "all fees and other charges for such physicians' and surgeons' treatment and hospital treatment shall be reasonable and based upon the usual fees and charges which prevail in the same community for similar physicians', surgeons' and hospital services." N.J.S.A. 34:15-15.

Livingston, the judge of compensation found, "The doctor is not qualified as a professional coder" and has "no expertise in medical billing." While "[h]e testified about what he does in his group and the trauma center in Newark," he submitted no figures "for [no-fault] claims other than himself. No figures were submitted for Medicaid allowed payments." Similarly, the judge found the testimony of petitioner's CFO "neither helpful nor informative." The judge concluded, "Petitioner has failed to present any expert testimony. It has failed to present proofs to persuade the court that the fees paid are not reasonable, usual and customary."

In contrast, the judge found persuasive the testimony of respondent's witness, Sandra Corradi, vice president of a bill review company retained by respondent's insurer. Noting her experience as a professional coder with expertise in medical billing, the judge credited Corradi's testimony "that in her experience . . . , the industry standard of reimbursement is paid at the seventy-fifth percentile as indexed by [FAIR] Health[4] for New Jersey." The judge therefore concluded:

---

[4] According to its website, "FAIR Health is a national, independent, nonprofit organization dedicated to bringing transparency to healthcare costs and healthcare insurance information and data products, consumer resources and health systems research support." About FAIR Health, http://www.fairhealth.org/About-FH (last visited Aug. 16, 2017). FAIR Health, Inc., was established in 2009 "to create a conflict-free, robust, trusted and transparent source of data to support the adjudication of healthcare claims and to promote sound

4                                                              A-3350-15T2

> Although the court is not bound by that figure, it is persuasive because it reflects the insurance industry's concentration of approved and accepted payments to medical providers. As such, the court finds that the fees paid were reasonable because [the insurer] made its determination on the prevailing fees paid in that community . . . .

Consequently, the judge dismissed petitioner's claim "with prejudice for failure to sustain the burden of proof." This appeal followed.

## II.

When reviewing the decision of a judge of compensation, our role is "limited to 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, with due regard to the opportunity of the one who heard the witnesses to judge of their credibility.'" Sager v. O.A. Peterson Constr., Co., 182 N.J. 156, 163-64 (2004) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)); Hersh v. Cty. of Morris, 217 N.J. 236, 242 (2014). However, we owe no special deference to the Division in its resolution of legal questions. Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973) (applying de novo review to determinations of legal issues).

_____

decision-making by all participants in the healthcare industry." Ibid.

We remain guided by the remedial nature of the Act, which is "entitled to liberal construction in order to comport with its presumptive beneficence." Brunell v. Wildwood Crest Police Dep't, 176 N.J. 225, 235 (2003). The Act allows for the filing of claim petitions by — and on behalf of — injured employees. N.J.S.A. 34:15-15 states that an

> employer shall not be liable to furnish or pay for physicians' or surgeons' services in excess of $50.00 and in addition to furnish hospital service in excess of $50.00, unless the injured worker or the worker's physician who provides treatment, or any other person on the worker's behalf, shall file a petition with the Division of Workers' Compensation.
>
> [N.J.S.A. 34:15-15.]

N.J.S.A. 34:15-15.1 then provides for reimbursement where another person or organization has paid expenses under the Act. Specifically,

> [w]henever the expenses of medical, surgical or hospital services, to which the petitioner would be entitled to reimbursement if such petitioner had paid the same as provided in section 34:15-15 of the Revised Statutes, shall have been paid by any insurance company or other organization by virtue of any insurance policy, contract or agreement which may have been procured by or on behalf of such petitioner, or shall have been paid by any person, organization or corporation on behalf of such petitioner, the deputy directors or referees of the Division of Workmen's Compensation are authorized to incorporate in any award, order or approval of settlement, an order requiring the employer or his insurance carrier to reimburse such insurance

6                                                          A-3350-15T2

> company, corporation, person or organization in the amount of such medical, surgical or hospital services so paid on behalf of such petitioner.
>
> [N.J.S.A. 34:15-15.1.]

"All fees and other charges for such physicians' and surgeons' treatment and hospital treatment shall be reasonable and based upon the usual fees and charges which prevail in the same community for similar physicians', surgeons' and hospital services." N.J.S.A. 34:15-15.

On appeal, petitioner argues the judge erred in concluding the seventy-fifth percentile payments made by respondent's insurer were reasonable, emphasizing the fact that the treatment under review was rendered at a Level I trauma hospital. Petitioner argues the Division should treat trauma services rendered to an injured worker at a Level I trauma hospital no differently than the same services rendered to an automobile accident victim at the same facility.

N.J.S.A. 39:6A-4.6 mandates that no-fault policies reimburse healthcare providers pursuant to medical fee schedules incorporating the "reasonable prevailing fees of 75% of the practitioners within the region." However, the implementing regulation exempts trauma services at Level I and Level II trauma hospitals from the fee schedule. See N.J.A.C. 11:3-29.4. Thus,

petitioner argues for payment of its bills at the ninety-fifth percentile, as submitted.

We reject this argument.  While the no-fault regulation exempts trauma services at Level I and Level II trauma hospitals from the fee schedule, such charges must still be usual, customary, and reasonable.

> [D]etermination of the usual, reasonable and customary fee means that the provider submits to the insurer his or her usual and customary fee by means of explanations of benefits from payors showing the provider's billed and paid fee(s).  The insurer determines the reasonableness of the provider's fee by comparison of its experience with that provider and with other providers in the region.  National databases of fees, such as those published by Ingenix (www.ingenixonline.com), FAIR Health (www.fairhealthus.org) or Wasserman (http://www.medfees.com/), for example, are evidence of the reasonableness of fees for the provider's geographic region or zip code.  The use of national databases of fees is not limited to the above examples.  When using a database as evidence of the reasonableness of a fee, the insurer shall identify the database used, the edition date, the geozip and the percentile.
>
> [N.J.A.C. 11:3-29.4(e)(1).]

In reaching her decision in this case, the judge appropriately employed this process and also relied upon our decision in Coalition for Quality Health Care v. New Jersey Department of Banking and Insurance, 358 N.J. Super. 123, 128 (App. Div. 2003), where we upheld the Insurance Department's use of paid fees rather

than billed fees as representing a more accurate measure of "reasonable and prevailing fees."

Because the judge based her determination upon the usual fees and charges that prevail in New Jersey for similar physicians' and surgeons' services, we affirm substantially for the reasons set forth in the judge's cogent and well-reasoned March 17, 2016 written decision and her subsequent written amplification. We have considered petitioner's remaining contentions and conclude they lack sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION