809 A.2d 832

MARIA PRATA, PETITIONER–RESPONDENT, v. BANNER PHARMACAPS, INC., RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 7, 2002—Decided November 19, 2002.

Before Judges PETRELLA,[1] BRAITHWAITE and PARKER.

*Francis T. Giuliano* argued the cause for appellant.

*Charles I. Turner* argued the cause for respondent (*Kirsch, Gelband & Stone,* attorneys; *Mr. Turner,* on the brief).

The opinion of the court was delivered by

PARKER, J.A.D.

This is an employer's appeal from a workers' compensation judgment in favor of the employee for seven and one-half percent permanent partial disability resulting from low back strain. The judgment amounted to $5,940, plus $800 in doctors' fees and $1,000 in counsel fees.

[1] Judge Petrella did not participate in oral argument. However, the parties consented to his participation in the decision.

The facts elicited during the compensation court hearing indicate that the petitioner had been employed as a packaging inspector by respondent for seventeen and one-half years. Her job responsibilities included lifting parcels weighing about thirty pounds. She left employment with respondent in April 1997 and began working for American Vitamin Products, Inc. (Intergel) on July 7, 1997, doing the same work she had done with respondent. When she applied for her position at Intergel, she claimed that her health was "excellent," that she had no physical or mental condition which would limit her ability to work at Intergel, and that her medical history involved nothing more than "checkups."

In September 1997, however, she filed a petition against respondent, claiming "injury to pulmonary and internal system, eyes, ears, back[,] upper and lower extremities[,] pulmonary[,] internal[,] opthalmological[,] otolarynological[,] and ortho in nature with neuro and neuropsych complications."

In December 1997, when she was three months pregnant, she was examined by Dr. Jack Haberman, who found "a flattening of the lumbar curve ... [and] diffused hardness and tenderness of the paravertebral musculature of the lumbo dorsal, lumbar and lumbo sacral region."

On February 1, 1999, after her baby was born, she was examined by Dr. David E. Gross on behalf of respondent. Dr. Gross found normal spinal curvatures, no swelling or spasm anywhere, normal neck and trunk motions and "no finding for any permanent orthopedic disability resulting from this alleged exposure."

On July 18, 2000, petitioner underwent an independent evaluation at the University of Medicine and Dentistry of New Jersey (UMDNJ). During that examination, for the first time, she told physicians that her symptoms began in 1996, a year before she left her employment with respondent. The report from the UMDNJ examination stated:

> Ms. Prata is a 38-year-old woman, employed in the pharmaceutical industry for the last 20 years, who is complaining of 2 distinct symptom constellations. One involves neck, upper back and upper chest pain which she is concerned may be

associated with an injury that occurred at work 4 years ago. Further complaints involve dizziness and some ataxia and electrical sensations in her head which have been occurring over the last approximately 19 years, which she believes may be associated with her exposure to solvents including alcohol and Naphtha at Banner Pharmacaps .... She is able to work at her present job as a packaging supervisor without any impairment .... Her condition appears to be a muscular strain.

....

Concerning her dizziness and ataxia, .... [a]t the present time she has no determinable impairment.

Petitioner testified at the February 6, 2001, workers' compensation hearing that "[a]bout two years ago, the pain in [her] leg [got] worse. So I thought [it] was not the problem from work. But the problem now, it's from my back; the leg hurts because I have a problem in my back." Petitioner attributed the problem to her employment with respondent. She testified that she visited a doctor for the pain and received an injection two years ago. She received another injection one year ago, but since then had no further treatment. In response to her attorney's question as to whether the pain interfered with her work in any way, she responded, "I couldn't write .... for ... about two months." When asked whether the condition caused any problem at home, petitioner responded that five months before when she was washing clothes and hanging them up, she experienced pain in her arm. She testified further that when she cleans the house she can only move furniture a little bit and her "husband has to do .... [t]hings like that ...."

The evidence included three medical evaluations: the December 1997 report by petitioner's physician, Dr. Haberman; the February 1999 report by respondent's physician, Dr. Gross; and the July 2000 report from the independent examination at UMDNJ. The judge of compensation rendered an oral decision on March 20, 2001, in which he found "the petitioner's testimony [ ] credible ... as well as the doctors['] as reflected in their reports." He went on to conclude that "any pulmonary disability ... resolved itself and thus is not a permanent injury." With respect to the orthopedic claim, however, he found "that the petitioner suffered a permanent disability of 7-½ percent resulting from a back strain."

Apparently, the judge based his decision on petitioner's testimony that "she did lifting at work for the entire time period that she worked for respondent[.][S]he did relate a particular incident of back strain, but the date of same is not clear. She believes that her back is getting worse. The pain in her back remains when lifting and moving. The pain goes down her right leg."

In this appeal, respondent argues:

*POINT I*

THE PETITIONER FAILED TO ESTABLISH PERMANENT IMPAIRMENT OF HER LOW BACK AND RIGHT LEG BY DEMONSTRABLY OBJECTIVE MEDICAL EVIDENCE.

*POINT II*

THE PETITIONER FAILED TO ESTABLISH PERMANENCY, AND THEREFORE SHE WAS NOT ENTITLED TO AN AWARD FOR PERMANENT DISABILITY BENEFITS.

*POINT III*

THE DIVISION OF WORKERS' COMPENSATION DID NOT HAVE JURISDICTION TO ENTER AN AWARD FOR PERMANENT PARTIAL DISABILITY IN PETITIONER'S FAVOR FOR AN ACCIDENT.

*POINT IV*

THE DECISION OF THE TRIAL COURT IS LEGALLY DEFECTIVE IN THAT IT FAILS TO ADDRESS IN ANY WAY WHATSOEVER THE ADDITIONAL PRECONDITIONS OF *N.J.S.A.* 34:15–36 FOR AN AWARD OF PERMANENT PARTIAL DISABILITY.

■ Respondent initially contends that *N.J.S.A.* 34:15–36 requires a finding of permanent impairment based upon demonstrable *objective* medical evidence, which restricts the function of the body or its members or organs. *Perez v. Pantasote, Inc.*, 95 *N.J.* 105, 469 *A.*2d 22 (1984). In *Perez*, the Court held that "objective medical evidence is understood to mean evidence exceeding the subjective statement of the petitioner." *Id.* at 116, 469 *A.*2d 22.

■ In *Saunderlin v. E.I.DuPont Co.*, 102 *N.J.* 402, 508 *A.*2d 1095 (1986), the Court reiterated and re-emphasized its holding in *Perez* that the determination of permanent partial disability can no longer rest upon petitioner's subjective complaints. In *Saunderlin*, the Court stated, "[I]n no event will a medical doctor's mere 'parroting' of the patient's statement be sufficient." *Id.* at 416, 508 *A.*2d 1095. In a claim for permanent partial disability,

therefore, the threshold question is whether the petitioner has presented demonstrable *objective* medical evidence of a functional limitation.

Here, the judge of compensation accepted all of the medical reports as credible. While he properly concluded that petitioner's respiratory ailments had resolved over time, he failed to consider the chronological significance of the orthopedic reports to determine whether that injury had resolved, as well.

Petitioner argued that objective medical evidence was demonstrated by Dr. Haberman's report of his December 1997 examination. In that report, Dr. Haberman found "a flattening of the lumbar curve ... [and] diffused hardness and tenderness of the paravertebral musculature of the lumbo dorsal, lumbar and lumbo sacral region." By February 1999, however, Dr. Gross found nothing indicating "any permanent orthopedic disability resulting from this alleged exposure." Even more significantly, the independent evaluation done at UMDNJ in July 2000, six months before the hearing, found:

> She had full range of motion of her neck on flexion, extension, rotation and abduction without pain. She had full range of motion of her arms and shoulder without pain. There was no spinal tenderness. No paraspinal muscular tenderness or spasm. She had full range of motion of her back. There was no low back tenderness or spasm. She had ⅘ strength bilaterally of her upper extremities. Her sensation was intact grossly bilaterally. Her reflexes were 2+ bilaterally, her gait was within normal limits. She had no dysdiadokinesis. She had no Romberg's sign. She performed finger-to-nose maneuvers without any deficits. Cranial nerves II–XII were grossly intact.

The UMDNJ report further stated:

> At the present time she has symptoms that occur on an irregular basis, associated with particular arm movements. She is able to work at her present job as a packaging supervisor without any apparent impairment .... She is not complaining of paresthesias, numbness or weakness in her arms, which would be suggestive of nerve pathology.

The statement in the UMDNJ report that "her condition appears to be muscular strain," is related to plaintiff's reporting, rather than objective medical findings.

Our scope of review of workers' compensation awards is limited to whether the judge's decision was based upon sufficient

credible evidence. *Close v. Kordulak Bros.*, 44 *N.J.* 589, 599, 210 *A.*2d 753 (1965). Here, however, there was no current demonstrable objective medical evidence in the record to support a finding of permanent disability. As with petitioner's pulmonary complaints, any back injury she may have suffered apparently resolved between the February 1997 examination by Dr. Haberman and the July 2000 examination at UMDNJ.

In *Allen v. Ebon Services Int'l, Inc.*, 237 *N.J.Super.* 132, 567 *A.*2d 228 (App.Div.1989), we addressed the issue of timely medical reports in a workers' compensation claim. There, petitioner's accident occurred on December 6, 1985, and petitioner submitted orthopedic and neurological reports from February 13, 1986, examinations. At the hearing three years later in January 1989, both physicians testified that they had not examined the petitioner since February 1986. Relying on the physician's opinions from their 1986 examinations, the judge of compensation awarded petitioner permanent partial disability. We reversed on the ground that the petitioner failed to present demonstrable objective evidence of a permanent disability at the time of the hearing. We held that "the validity of a medical finding of a permanent injury may decrease with the passage of time. Surely the Legislature, in making minor injuries noncompensable, did not intend that awards routinely be made on the basis of medical examinations performed shortly after the accidents and well before the hearings in the absence of recent objective medical evidence of continued impairment." *Id.* at 136, 567 *A.*2d 228 (citation omitted). Similarly, petitioner here failed to present timely objective medical evidence of permanent disability.

Based upon our conclusion that petitioner failed to present current objective medical evidence of permanent impairment, we are constrained to reverse. Accordingly, we need not address the remaining points raised in this appeal.

The judgment of the court of compensation is reversed and vacated.