**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2891-16T1

IN THE MATTER OF MICHAEL
MULCAHY, MICHAEL SMITH,
and CITY OF BAYONNE.

_____

Submitted February 27, 2019 – Decided March 28, 2019

Before Judges Accurso, Vernoia and Moynihan.

On appeal from the New Jersey Civil Service Commission, Docket No. 2016-819.

Joel S. Silberman, attorney for appellant Michael Mulcahy.

Christine Finnegan, attorney for appellant Michael Smith, joins in briefs of appellant Michael Mulcahy.

Roth D'Aquanni, LLC, attorneys for respondent City of Bayonne (Allan C. Roth, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Civil Service Commission (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Pamela N. Ullman, Deputy Attorney General, on the brief).

PER CURIAM

Petitioners Michael Mulcahy and Michael Smith appeal from the Civil Service Commission's February 10, 2017 final decision rejecting their challenge to the City of Bayonne's decision laying them off from their Municipal Services Department (MSD) positions. We affirm.

Bayonne hired Mulcahy in 2011 as a housing inspector and Smith in 2012 as a field representative. They worked in the MSD enforcing Bayonne's property maintenance and municipal codes. On May 25, 2015, Bayonne submitted a layoff plan to the Commission stating in part that "[d]ue to reasons of economy and severe budget shortfalls," it intended to lay off Mulcahy, Smith and their co-employee in the MSD, Gary Parlatti. The plan described pre-layoff actions taken by Bayonne to lessen the impact of the proposed layoffs on permanent employees, such as reviewing overtime requests, eliminating intern positions, and reviewing expense accounts.

On June 1, 2015, the Commission approved the layoff plan and Bayonne served Mulcahy and Smith with notices laying them off effective July 17, 2015. Mulcahy and Smith challenged the layoffs, claiming Bayonne did not lay them off in good faith for reasons of efficiency or economy.[1] See N.J.A.C. 4A:8-

---

[1] Gary Parlatti exercised bumping rights and was demoted to a different position. Parlatti joined Mulcahy's and Smith's challenge to the layoffs in the

1.1(a). The Commission referred the matter to the Office of Administrative Law for a hearing before an administrative law judge (ALJ).

Following the hearing, the ALJ issued a written decision finding Mulcahy, Smith and Parlatti "performed property code enforcement for Bayonne and handled citizen complaints" by "respond[ing] to complaints and issu[ing] warnings, and summonses when appropriate, for code violations." The ALJ further found that following the layoffs, Bayonne "hired in excess of 100 new employees," "continued to hire seasonal employees" and never offered Mulcahy or Smith a seasonal employee position.

The ALJ noted that Bayonne relied on an alleged change in its property code enforcement philosophy to support its claim that there was a reduced need for employees performing Mulcahy's, Smith's and Parlatti's MSD job duties. The ALJ noted it was "not disputed that Bayonne had a budget deficit and needed to cut costs," but found the change in code enforcement philosophy was "never articulated" in a memorandum or meeting with the employees and there was "no credible evidence that this change in philosophy was put in place."

proceedings before the administrative law judge and Commission but has not participated in the appeal of the Commission's final decision.

The ALJ found the testimony of Robert Wondolowski, MSD's director at the time of the layoffs, and Joseph DeMarco, Bayonne's City Administrator, was not credible. Wondolowski and DeMarco testified the layoffs resulted from a reduced need for the code enforcement duties previously performed by Mulcahy, Smith and Parlatti because, following the election of Mayor Jimmy Davis in 2014, Bayonne changed its code enforcement philosophy due to complaints from Bayonne's citizens. More particularly, the code enforcement philosophy changed from actively seeking out violations of Bayonne's property maintenance ordinances and aggressively ticketing violators until the violations were resolved, to responding only to citizen complaints about alleged violations.

The ALJ concluded "Bayonne did not effectuate the layoffs due to reasons of economy and severe budget shortfalls" and "[t]here is no credible evidence that [the] change in philosophy was put into place." The ALJ found that Bayonne had not done what it indicated it would do in its layoff plan and, although the evidence did not "establish[] why Bayonne wished to remove [Mulcahy and Smith] . . . it is clear that the purpose of the layoff plan was their removal, and not for purposes of economy or budget shortfalls." The ALJ recommended that Mulcahy and Smith be restored to their respective positions

A-2891-16T1

with back pay, "subject to mitigation for income earned during" the period following the layoffs.

Bayonne filed exceptions to the ALJ's decision. In the Commission's final decision, it declined to adopt the ALJ's findings and concluded the ALJ's credibility determinations as to Wondolowski and DeMarco were not supported by the evidentiary record. The Commission recognized an ALJ "is generally in a better position to determine the credibility and veracity of the witnesses," and that it "appropriately gives due deference to such determinations." The Commission further observed that it may only reject or modify an ALJ's "findings of fact as to issues of credibility of lay witness testimony [if] it is first determined from a review of the record that the findings are arbitrary, capricious or unreasonable or are not supported by sufficient, competent and credible evidence in the record." See N.J.S.A. 52:14B-10(c). The Commission, however, determined the ALJ's credibility determinations are not supported by sufficient credible evidence in the record, and found Wondolowski's and DeMarco's testimony credible.

The ALJ found Wondolowski's testimony was not credible because Wondolowski testified on direct examination "he did not speak with . . . DeMarco regarding layoffs," but on cross-examination said he discussed "the

5

A-2891-16T1

budget and possibility of layoffs" with DeMarco.  But the Commission concluded the ALJ's findings are not supported by the record.  Wondolowski was asked during direct examination if DeMarco ever spoke to him "about laying [Mulcahy and Smith] off."  In response, Wondolowski said, "[w]e talked about our budgets and where there were inefficiencies," but he never denied discussing layoffs.  As explained by the Commission, when Wondolowski was asked on cross-examination if he ever had a "conversation with . . . DeMarco regarding the potential layoffs," he testified "there were discussions about what [they] needed to do as far as the budgets and layoffs, yes."  The Commission did not find Wondolowski's testimony inconsistent and rejected the ALJ's determination that it was.

The ALJ also found Wondolowski testified that he did not know about a change in philosophy regarding property maintenance enforcement, but actually he only denied discussing a philosophy of "not enforc[ing] the [p]roperty [m]aintenance [c]odes."  The Commission noted the ALJ stated that on direct examination Wondolowski said he did not tell Mulcahy and Smith to stop writing tickets for property maintenance violations, but the record shows Wondolowski was never asked about that issue on direct examination.  In sum, the Commission determined the ALJ's finding Wondolowski was not credible

A-2891-16T1

was based on findings of fact about his testimony that were bereft of support in the record.

The Commission similarly found the ALJ's credibility determination concerning DeMarco was undermined by the record. The ALJ observed that DeMarco's "testimony was straightforward and direct," but concluded his testimony that the layoffs resulted from a change in the property maintenance enforcement philosophy was not credible because there was no corroborative evidence of the change. More particularly, the ALJ noted that there was no memorandum concerning the change or meetings during which it was discussed and that "[a]ll other witnesses, including . . . Wondolowski, were unaware of the change in philosophy."

The Commission rejected the ALJ's findings and conclusion concerning DeMarco's credibility, explaining that "multiple witnesses . . . testified that there was a change in philosophy from active to passive code enforcement and that this change went into effect," and they corroborated "DeMarco's testimony regarding the change in philosophy." The Commission summarized the testimony of MSD employee Thomas Keyes who explained that prior to Mayor Davis taking office in 2014, "it was standard practice . . . to write multiple summonses on a property owner even if the summonses were repetitive," but

7

following Mayor Davis taking office, "the program became less punitive and 'went back to the way the job was supposed to be, which was to be rehabilitative to the neighborhood.'" The Commission also cited the testimony of Laura Kline, "who worked directly with" Mulcahy and Smith, and understood that following Mayor Davis taking "office[] there was a determination not to actively look for property maintenance violations," "there was a change in philosophy" and "she was in at least one or two meetings where Wondolowski told Keyes[, Mulcahy and Smith] to stop actively looking for property maintenance violations."

The Commission found that based on the credible evidence presented, including the testimony of Wondolowski and DeMarco, Bayonne "underwent a shift in its philosophy as to how it would enforce its property maintenance code, and [the] change was effected notwithstanding that it was not written." The Commission noted that Mulcahy acknowledged DeMarco instructed him to slow down his code enforcement actions, and Bayonne's Chief Financial Officer, Terrance Malloy, testified Mayor Davis's administration had "a different philosophy" of property code enforcement than "the [previous] administration" and "there were no longer roving patrols out looking to write tickets."

The Commission also found that under the changed approach, "Bayonne did not send employees into the field to look for violations and write tickets,"

and that it was "reasonable for it to conclude that it no longer needed to maintain the same staff level." Noting that "an appointing authority has discretion as to how it runs its operation," the Commission concluded Mulcahy and Smith failed to sustain their burden of proving Bayonne laid them off in bad faith for reasons other than efficiency and economy. This appeal followed.

Mulcahy and Smith present the following arguments for our consideration:

> THE CIVIL SERVICE COMMISSION'S DECISION MUST [BE] OVERTURNED BECAUSE IT IS ARBITRARY, CAPRICIOUS, UNREASONABLE AND IS UNSUPPORTED BY THE RECORD BELOW.
>
> A. THE RECORD CLEARLY ESTABLISHES THAT BAYONNE DID NOT EFFECTUATE APPELLANT'S LAYOFF FOR ECONOMY AND EFFICIENCY AS INDICATED IN THEIR LAYOFF PLAN.
>
> B. THE OAL'S CREDIBILITY DETERMINATIONS SHOULD NOT HAVE BEEN DISTURBED.

Smith also presents the following argument:

> THE INITIAL DECISION IS DEEMED ADOPTED, N.J.S.A. §52:14b-10(C). DECEMBER 17, 2016 WAS THE 45TH DAY.

Our scope of review of administrative decisions is limited. <u>In re Stallworth</u>, 208 N.J. 182, 194 (App. Div. 2011). Appellate courts should not

disturb an administrative decision unless the court finds it to be arbitrary, capricious, or unreasonable. Karins v. City of Atl. City, 152 N.J. 532, 540 (1998). "The precise issue is whether the findings of the agency could have been reached on substantial credible evidence in the record, considering the proofs as a whole." In re Hess, 422 N.J. Super. 27, 34 (App. Div. 2011) (citing Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)).

We are not persuaded by Mulcahy's and Smith's contention that the Commission erred by rejecting the ALJ's determination that Wondolowski and DeMarco were not credible witnesses. An agency head sitting in review of an ALJ's initial decision cannot "reject or modify any findings of fact as to issues of credibility of lay witness testimony unless it is first determined from a review of the record that the findings are arbitrary, capricious, or unreasonable or are not supported by sufficient, competent, and credible evidence in the record." N.J.S.A. 52:14B-10(c). Where an agency head rejects or modifies an ALJ's fact finding or credibility determinations, "the agency head shall state with particularity the reasons for rejecting the findings and shall make new or modified findings supported by sufficient, competent, and credible evidence in the record." Ibid. Overturning an ALJ's fact finding or credibility determinations cannot be done by merely "relying upon additional evidence

present in the record." Cavalieri v. Bd. of Trs. of Pub. Emps. Ret. Sys., 368 N.J. Super. 527, 534 (App. Div. 2004).

Here, the Commission stated with particularity its reasons for rejecting the ALJ's credibility determinations as to Mulcahy and Smith. See N.J.S.A. 52:14B-10(c). The Commission found the ALJ's determinations were either not supported by the record or, in some instances, were contradicted by the record. See ibid. We observe that the Commission did not "simply substitute its judgment for that of the ALJ's," Cavalieri, 368 N.J. Super. at 534, but instead relied on credible testimony that directly contradicted the ALJ's credibility determinations. Our independent review reveals that the record undermines the ALJ's credibility findings and includes sufficient evidence supporting the Commission's credibility determinations. We therefore discern no basis to reverse the Commission's credibility findings or its other findings of fact, all of which find support in the evidence.

Mulcahy and Smith further argue the Commission's decision should be reversed because their layoffs were not for reasons of efficiency or economy. "An appointing authority may institute layoff actions for economy, efficiency, or other related reasons." N.J.A.C. 4A:8-1.1(a). An employee laid off subject to this regulation may challenge the termination by asserting "the appointing

authority laid off . . . the employee . . . for reasons other than economy, efficiency, or other related reasons." N.J.A.C. 4A:8-2.6(a)(1); see also N.J.S.A. 11A:8-4. A municipality's actions are presumed to be in good faith, see Schnipper v. Twp. of N. Bergen, 13 N.J. Super. 11, 15 (App. Div. 1951), and the employee bears the burden of proving that the appointing authority acted in bad faith by a preponderance of the evidence, N.J.S.A. 11A:8-4. An employee seeking to establish that an appointing authority acted in bad faith must prove that the municipality's "design in adopting the [layoff] plan was [not] to accomplish" economy or efficiency, but "was to effect the removal of a public employee, protected by civil service, without following the statutory procedure for removal." Greco v. Smith, 40 N.J. Super. 182, 190 (App. Div. 1956).

There is sufficient credible evidence supporting the Commission's determination that Mulcahy and Smith failed to sustain their burden of proving the layoffs were made in bad faith. The evidence the Commission deemed credible showed that following Mayor Davis's election in 2014, Bayonne's property maintenance philosophy changed from an aggressive to a more passive approach. Under the new philosophy, MSD inspectors were no longer required to seek out and ticket violators, but instead only responded to complaints about alleged code violations. The change in philosophy resulted in a reduction in the

12

need for MSD inspectors. The evidence showed Wondolowski understood the change in philosophy would require layoffs and that after Mulcahy and Smith were laid off and Parlatti was transferred, the number of MSD-issued tickets dropped dramatically.

"[I]t was not the design of the Civil Service Act to perpetuate offices regardless of whether they [are] needed or not." Amodio v. Civil Serv. Comm'n, 81 N.J. Super. 22, 31 (App. Div. 1963). The testimony and evidence supported Bayonne's determination that Mulcahy's, Smith's and Parlatti's positions were unnecessary to complete the MSD's property maintenance enforcement responsibilities following Bayonne's implementation of the new enforcement philosophy. As the Commission correctly determined, Mulcahy and Smith failed to sustain their burden of demonstrating otherwise.

We are not persuaded by Smith's argument that the ALJ's decision should be deemed adopted by the Commission under N.J.S.A. 52:14B-10(c) because the Commission did not modify or reject the decision within forty-five days. Smith's challenge is a limited one: he argues only that the Commission failed to properly obtain a forty-five-day statutory extension during which it could reject or modify the ALJ's initial decision.

N.J.S.A. 52:14B-10(c) provides that "[u]nless the head of the agency modifies or rejects" an ALJ's decision within forty-five days, it "shall be deemed adopted as the final decision of the head of the agency." N.J.S.A. 52:14B-10(c). The statute also allows a "single extension of not more than [forty-five] days" where "good cause" is shown.[2] Ibid. A request for such an extension "must be submitted no later than the day on which that time period is to expire." N.J.A.C. 1:1-18.8(b). To request an extension for good cause, the "agency head . . . [must] sign and forward a proposed order to the Director of the Office of Administrative Law," who, if he or she approves the request, "shall within [ten] days of receipt of the proposed order sign the proposed order and return it to the transmitting agency head, who shall issue the order and cause it to be served on all parties." N.J.A.C. 1:1-18.8(e). The Commission obtained such an extension and timely rendered its decision here.

The ALJ issued his decision on November 2, 2016. Under N.J.S.A. 52:14B-10(c), the ALJ's decision would be deemed adopted unless the Commission modified or rejected the decision within forty-five days, or any extensions of the initial forty-five-day period. Here, the initial forty-five-day

---

[2] N.J.S.A. 52:14B-10(c) permits additional extensions of time "subject to, and contingent upon, the unanimous agreement of the parties." No such extension was obtained or required here.

period expired on December 17, 2016, but was extended to Monday, December 19, 2016, because December 17, 2016, was a Saturday. See N.J.A.C. 1:1-1.4.

On December 19, 2016, the Commission submitted a proposed order granting a forty-five-day extension until January 31, 2017, for it to "review the testimony . . . in order to make a final determination and issue a written decision." See N.J.A.C. 1:1-18.8(e). Thus, the Commission timely submitted the extension request to the Director of the Office of Administrative Law within the initial forty-five day period, see N.J.A.C. 1:1-18.8(b), and the extension was timely granted by the Director of the Office of Administrative Law on December 20, 2016, within ten days of the request, see N.J.A.C. 1:1-18.8(e). The Director determined the Commission demonstrated "good cause" for the forty-five-day extension, and the Commission "mailed [the] executed order to parties" the same day. See N.J.A.C. 1:1-18.8(e). Thus, the Commission properly requested and obtained a forty-five-day extension to adopt, reject, or modify the ALJ's initial decision. See N.J.S.A. 52:14B-10(c).

The Commission also rejected the ALJ's initial decision within the forty-five-day extension, and petitioners do not argue otherwise. Our Supreme Court has explained that the Legislature amended N.J.S.A. 52:14B-10(c) "to set a strict deadline for administrative agencies 'to adopt, reject or modify' an ALJ's

decision." In re Hendrickson, 235 N.J. 145, 158 (2018) (quoting N.J.S.A. 52:14B-10(c)). "Under the amendment, when the agency does not act within the forty-five-day statutory timeframe—or within the single extension period not to exceed forty-five days—the ALJ's decision is 'deemed adopted as the final decision of the head of the agency.'" Ibid. (emphasis added) (quoting N.J.S.A. 52:14B-10(c)).

Here, the record shows that the Commission acted to reject the ALJ's initial decision at its meeting "on the [eighteenth] day of January, 2017[]" see N.J.S.A. 52:14B-10(c), well within the forty-five-day extension deadline that ended on January 31, 2017. The Commission later formally memorialized its January 18, 2017 action on February 10, 2018, by publishing its final agency decision. As we held in Cavalieri, where, as here, an agency "signaled its intentions to reject the initial decision" within the statutory deadline and "issued its final decision reasonably promptly thereafter," the ALJ's initial decision is not deemed adopted pursuant to N.J.S.A. 52:14B-10(c). Cavalieri, 368 N.J. Super. at 539. We are therefore satisfied there is no basis to conclude the ALJ's decision should be deemed adopted by the Commission under N.J.S.A. 52:14B-10(c).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2891-16T1