**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3682-19

IN THE MATTER OF THALIA
TRETSIS MIDDLESEX
COUNTY, SHERIFF'S OFFICE.

_____

Argued February 3, 2022 – Decided February 15, 2022

Before Judges Haas and Mawla.

On appeal from the New Jersey Civil Service Commission, Docket Nos. 2018-2711 and 2018-1572.

Catherine M. Elston argued the cause for appellant Thalia Tretsis.

Benjamin D. Leibowitz, Senior Deputy County Counsel, argued the cause for respondent Middlesex County Sheriff's Office (Thomas F. Kelso, Middlesex County Counsel, attorney; Benjamin D. Leibowitz, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent New Jersey Civil Service Commission (Craig S. Keiser, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant Thalia Tretsis appeals from the May 1, 2020 final administrative determination of the Civil Service Commission (Commission) removing her from her position as a sheriff's officer with the Middlesex County Sheriff's Office (County), but modifying that removal to a resignation in good standing. The Commission adopted the findings of fact and conclusions of law from the initial decision of Administrative Law Judge (ALJ) Sarah G. Crowley, who found appellant could not perform her duties at the time of her termination due to a knee injury from which she could not recover. See N.J.A.C. 4A:2-2.3(a)(3) (permitting an employer to remove an employee for "[i]nability to perform duties[.]"). We affirm.

Maureen Thompson, the County's employee benefits specialist, testified that appellant injured her right knee when she fell on ice in her job-site parking lot on March 6, 2015. Thompson processed appellant's workers' compensation claim for this incident. Between March and August 2015, appellant treated with two orthopedic doctors. She then returned to work on temporary light duty and later resumed her full responsibilities.

Thompson stated appellant left work again on unpaid leave between June and December 2016 due to personal unrelated medical issues. When appellant complained about continuing issues with her knee, Dr. Gregory Gallick took

over her case.  Gallick qualified as an expert in orthopedic medicine at the Office of Administrative Law (OAL) hearing.  After he reviewed appellant's medical records, Gallick performed arthroscopic surgery on her knee on January 5, 2017. He then prescribed medication and physical therapy.

Gallick testified that patients with similar conditions usually return to light duty in a short period of time and are able to resume their full duties within three months.  However, appellant told Gallick she still suffered significant pain a few weeks after the surgery, and did not clear her for light duty until mid-February.  When Gallick next saw her in March, appellant stated she was still in pain, had trouble on stairs, was unable to run, and had weakness in her knee. Appellant repeated these complaints when Gallick examined her in April and May 2017.

Because appellant had not recovered as expected, Gallick recommended that she undergo a "Functional Capacity Examination" (FCE).  Monica A. Lynch, the Director of Kinematic Consultants, Inc. (Kinematic),[1] testified on behalf of the County and qualified without objection as an expert in FCEs.

---

[1]  Kinematic is a private company and is not affiliated with the County. According to Lynch, who had twenty years of experience at the company, Kinematic performs FCEs on employees from a number of law enforcement agencies and other public entities.

A-3682-19

Lynch explained that an FCE tests an employee's ability to perform tasks associated with their jobs. By using computerized technology, the FCE measures such skills as an employee's strength, balance, and ability to move, lift, and pull. Each test is repeated a number of times to obtain an accurate representation of the individual's abilities.

Kinematic performed the FCE on appellant on June 8, 2017. After reviewing the results, Gallick found they confirmed his determination that appellant could not perform the full duties of a sheriff's officer. Appellant told Gallick she "did not feel comfortable going back to her regular job" because she had pain and weakness in her knee and was unable to run. The FCE supported these complaints and also showed that appellant's ability to lift over thirty-five pounds was compromised. Therefore, Gallick opined that appellant had reached her "maximum medical improvement" (MMI) level and could not perform her required duties.[2]

On June 27, 2017, Thompson attended an employee status conference with appellant to review the FCE. Appellant asked the county to send her to another

---

[2] Thompson and Undersheriff Kevin Harris testified about the full range of duties a sheriff's officer performed. Harris stated there was no permanent light duty available for sheriff's officers.

doctor for a second opinion. The County agreed and arranged with its workers' compensation carrier to have Dr. David Epstein examine appellant. Epstein qualified as an expert in orthopedic surgery and testified at the hearing.

On July 13, 2017, Epstein evaluated appellant. She told him she was still having pain and discomfort in her knee. He recommended gel injections, and with appellant's consent, the first injection occurred on August 15, 2017. However, when Epstein saw appellant again on September 7, 2017, she still complained of knee pain. Epstein then recommended another FCE.[3]

Kinematic conducted this FCE on September 18, 2017. Lynch testified appellant still had a deficit in her balance on her right side. She failed to meet the minimum requirements for the strength test, which also measured her diminished ability to lift and pull. Appellant continued to complain of pain in her knee, which worsened when bending, walking, and standing. According to Lynch, the FCE results indicated that appellant was only able to perform light duty work.

Gallick reviewed the results of the September FCE and Epstein's notes. Gallick testified that a patient's MMI is reached within three or four months. In

---

[3] Epstein stated he did not recommend another injection because appellant still experienced pain after the first one.

appellant's case, her surgery occurred in January 2017 and she was still complaining of pain in September 2017. Therefore, Gallick opined appellant had reached her MMI and could not perform the required duties of a sheriff's officer.

Epstein also reviewed the September FCE. According to Epstein, the results showed that appellant had significant limitations and continued to complain of pain. Like Gallick, Epstein opined appellant had reached full MMI and was unable to perform her full duties.

Harris testified that he is responsible for disciplining employees. After receiving the September FCE, Harris reviewed appellant's record and determined that her physical limitations prevented her from returning to full duty.

On September 28, 2017, the County served appellant with a Preliminary Notice of Disciplinary Action seeking to remove her from her position, together with a summary of the results of the September FCE. Harris testified the County Sheriff conducted a Loudermill[4] hearing for appellant on that same date.[5]

---

[4] Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). At a Loudermill hearing, the public employer is required to give the employee "notice [of] and an opportunity to respond" to the disciplinary charges. Ibid.

[5] Harris was present at the hearing.

A-3682-19

Following an October 25, 2017 departmental hearing, the County sustained the charge of inability to perform the essential functions of the job and issued appellant a Final Notice of Disciplinary Action on November 14, 2017. The County removed appellant from her position effective that date.

Appellant requested a hearing concerning her removal, and the Commission transmitted the matter to the OAL as a contested case. The ALJ conducted a multi-day hearing.

Appellant did not testify at the hearing. She presented the testimony Dr. Donald R. Polakoff, who qualified as an expert in orthopedic surgery. Polakoff examined appellant on May 1, 2019 for about forty-five minutes. He opined that appellant was able to perform the duties of a sheriff's officer because she demonstrated for him that she could hop on one leg at a time, do pushups and squats, and lift a file box he found in his office over her head while doing three knee bends. Polakoff did not know how much the box weighed. Polakoff was unable to provide any expert testimony on the value of FCE reports and did not offer an opinion on appellant's fitness for duty at any time prior to May 1, 2019, the date of his examination.

In her March 12, 2020 initial decision, the ALJ concluded appellant was unable to perform the duties of a sheriff's officer at the time the County

terminated her employment. In so ruling, the ALJ assessed the credibility of all the witnesses. She found the County's witnesses, Gallick, Epstein, Thompson and Harris, credible. However, the ALJ determined that Polakoff, who was appellant's sole witness, "provided no credible testimony on the issue of appellant's condition on the date of [her] MMI or about the validity of the FCE examinations."

In reaching these conclusions, the ALJ explained that Gallick's and Epstein's evaluations of appellant demonstrated she was not getting any better following her knee surgery. She still "report[ed] pain and weakness in the knee and an inability to run."

Gallick's and Epstein's expert diagnoses were supported by the two FCEs Kinematic conducted in 2017. The ALJ found these "reports and tests demonstrate[d] . . . that at the time of the appellant's removal she had reached [MMI] and was unable to perform the duties of a sheriff's officer and was therefore not fit for duty." The ALJ rejected appellant's contention that Kinematic may have incorrectly performed the FCEs. The ALJ found Lynch's credible expert testimony established that Kinematic "used all the normal protocols on appellant" and Kinematic's "equipment is tested on a regular basis to ensure the accuracy of the equipment."

On the other hand, the ALJ found Polakoff's testimony was not credible because it

> did not address appellant's ability to perform her job in September of 2017, when she was removed from her position as a sheriff's officer. An appointing authority is not required to wait three, four[,] or five years for an individual to return to duty. By the appellant's own admission to Dr. Gallick and Dr. Epstein, she continued to experience weakness and limitations in September of 2017.

Therefore, the ALJ concluded "that the appellant had reached [MMI] and was incapable of performing the duties of her position at the time of her termination." However, because "the reason for this separation was her inability to perform her job due to physical injury and not as the result of any conduct or action that is worthy of discipline," the ALJ modified appellant's termination "to a resignation in good standing."

The Commission thereafter adopted the ALJ's initial decision as its final administrative decision and concluded the County was justified in removing appellant from employment. The Commission also modified appellant's removal to a resignation in good standing.

Now on appeal, appellant raises the same contentions she unsuccessfully presented to the ALJ and the Commission. She asserts:

A-3682-19

[I].[6] BY DISREGARDING UNCONTESTED MEDICAL EVIDENCE ESTABLISHING THAT [APPELLANT] RECOVERED FROM HER INJURY AND IS FIT TO RETURN TO HER EMPLOYMENT AS A SHERIFF'S OFFICER, THE [COMMISSION] VIOLATED NEW JERSEY STATUTES, REGULATIONS, AND APPELLATE COURT RULINGS INTERPRETING SAME.

[II]. THE [COMMISSION'S] DETERMINATION IS ARBITRARY, CAPRICIOUS[,] AND UNREASONABLE AS IT AFFIRMED THE COUNTY'S ARBITRARY, CAPRICIOUS[,] AND UNREASONABLE CONDUCT IN TERMINATING [APPELLANT]. . . . THE [COMMISSION'S] DETERMINATION IS FURTHER ARBITRARY, CAPRICIOUS[,] AND UNREASONABLE AS THE TESTIMONY OF THE COUNTY'S WITNESSES WAS NOT CREDIBLE.

A. The County Admitted to Requiring [Appellant] to Satisfy Physical Requirements No Other Middlesex County Sheriff's Officer had to Satisfy.

B. The County Admitted that it Took Diametrically Opposed Positions Based on Identical FCE Conclusions.

C. The County Admitted that it Could Not, and Did Not, Identify Either the Essential Functions of a Sheriff's Officer's Job Referenced in the Specifications to the Charges, or the "DOT" Job Description

---

6  Appellant's original Point I set forth the applicable "Standard of Review."

A-3682-19

Relied Upon by Kinematics and the County's Medical Experts.

[III]. THE [COMMISSION] ERRED BOTH IN ITS RELIANCE ON INADMISSIBLE EVIDENCE, SPECIFICALLY, THE COUNTY'S FCEs AND EXPERT REPORTS, AND FURTHER, BY IMPROPERLY SHIFTING THE BURDEN TO [APPELLANT] TO ESTABLISH THE SCIENTIFIC RELIABILITY OF FUNCTIONAL CAPACITY EXAMINATIONS WHEN IT IS WELL-SETTLED THAT THE PARTY PROPOSING THE EVIDENCE, HERE, THE COUNTY, HAS THE BURDEN TO ESTABLISH ITS SCIENTIFIC RELIABILITY.

A. Contrary to the [Commission's] Determination, It is the County's Burden to Establish the Scientific Reliability of the FCEs Relied Upon in Terminating [Appellant].

B. Notwithstanding the Inadmissibility of the FCEs in and of themselves, the County Proffered No Evidence that the Testing Protocols Were Scientifically Reliable or that the Equipment Utilized to Measure [Appellant's] Physical Capabilities was Reliable in Terms of Performance or Calibration.

C. By Lynch's Admission, the Insurance Industry Does Not Consider the Testing Conducted by Kinematics as a "Medical Evaluation."

[IV]. THE [COMMISSION] ERRONEOUSLY FAILED TO REVERSE THE COUNTY'S

11

SUSPENSION OF [APPELLANT], WITHOUT PAY, IN LIGHT OF UNCONTROVERTED EVIDENCE THAT THE COUNTY VIOLATED ITS OWN POLICIES BY FAILING TO EXPLORE REASONABLE ACCOMMODATIONS FOR [APPELLANT] WHILE ON RESTRICTED OR LIGHT DUTY. . . . IN SUSPENDING [APPELLANT] WITHOUT PAY, THE COUNTY FURTHER VIOLATED [APPELLANT'S] PROCEDURAL DUE PROCESS RIGHTS.

[V]. THE [COMMISSION'S] FINAL ADMINISTRATIVE RULING VIOLATES THE CIVIL SERVICE ACT; THE [COMMISSION] ALSO FAILED TO TURN SQUARE CORNERS WITH [APPELLANT].

These arguments are so lacking in merit as to not warrant much discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons set forth in the Commission's final administrative determination, which adopted the well-supported findings of fact and conclusions of law the ALJ detailed in her comprehensive initial decision. See R. 2:11-3(e)(1)(D).

Our scope of review of an administrative agency's final determination is limited. In re Herrmann, 192 N.J. 19, 27 (2007). "[A] 'strong presumption of reasonableness attaches'" to the agency's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). Additionally, we give "due regard to the opportunity of the one

12                                                                                    A-3682-19

who heard the witnesses to judge . . . their credibility." In re Taylor, 158 N.J. 644, 656 (1999) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)).

The burden is upon the appellant to demonstrate grounds for reversal. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002); see also Bowden v. Bayside State Prison, 268 N.J. Super. 301, 304 (App. Div. 1993) (holding that "[t]he burden of showing the agency's action was arbitrary, unreasonable[,] or capricious rests upon the appellant."). To that end, we will "not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Application of Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008).

When an agency decision satisfies such criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, acknowledging "the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). It is not our place to second-guess or substitute our judgment for that of the agency and, therefore, we do not "engage in an independent assessment of the evidence

as if [we] were the court of first instance." Taylor, 158 N.J. at 656 (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

In addition, we give "due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility[,]" and therefore accept their findings of fact "when supported by adequate, substantial[,] and credible evidence." Ibid. (first quoting Close, 44 N.J. at 599 (second quoting Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974))). With regard to expert witnesses, we rely upon the trier of fact's "acceptance of the credibility of the expert's testimony and the [judge's] fact-findings based thereon, noting that the [judge] is better positioned to evaluate the witness' credibility, qualifications, and the weight to be accorded [to his or] her testimony." In re Guardianship of D.M.H., 161 N.J. 365, 382 (1999) (citing Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 607 (1989)).

Applying our highly deferential standard of review, we are satisfied the record amply supports the Commission's determination that appellant could not perform the duties of her sheriff's officer position when respondent removed her from employment in September 2017. See N.J.A.C. 4A:2-2.3(a)(3). The Commission adopted the ALJ's findings of fact, which were based on her assessment of the credibility of the expert and lay testimony. We must give

appropriate deference to the ALJ's and the Commission's findings where, as here, those findings are based on sufficient credible evidence in the record. Taylor, 158 N.J. at 658-59.

Contrary to appellant's contentions, the ALJ and the Commission considered all of the medical and lay evidence presented and concluded the County's proofs were more persuasive than the testimony of appellant's single witness. We defer to that well-reasoned determination. The ALJ never shifted the burden of proof to appellant on any issue. Appellant asserts the Commission ignored case law and statutes in its review but that claim also lacks merit because appellant's purported authorities concerned individuals who retired on disability pensions, not employees removed pursuant to N.J.A.C. 4A:2-2.3(a)(3).[7]

We also reject appellant's argument that the County provided insufficient proof of the nature and scope of her required duties and no credible evidence concerning the viability of the FCEs. As the ALJ correctly found, Thompson

---

[7] Appellant devotes a portion of her brief to a discussion of an application for accidental disability retirement benefits she filed following her removal. However, as we noted in Tretsis v. Bd. of Trs., Police & Firemen's Ret. Sys., No. A-1723-18 (June 24, 2020) (slip op. at 12), the pension board properly deferred its consideration of appellant's retirement application pending the outcome of the County's action to remove appellant from employment. Therefore, nothing in appellant's still pending retirement litigation is before us in this appeal.

and Harris testified in detail concerning the sheriff's officer's position, and Lynch provided the only expert testimony at the hearing about the validity of the FCEs.

We also discern no merit in appellant's contention that the County deprived her of due process during the removal proceedings. The County provided appellant with a <u>Loudermill</u> hearing and a departmental hearing, and an independent ALJ presided at her contested case hearing when the Commission referred her appeal to the OAL.

In sum, we conclude that the ALJ's findings are fully supported by the record and her legal conclusions are unassailable. Like the Commission, we affirm substantially for the reasons expressed in the ALJ's comprehensive written decision, which "is supported by sufficient credible evidence on the record as a whole[.]" <u>R.</u> 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3682-19